# CASES AT LAW

## DETERMINED IN THE

# COURT OF ERRORS AND APPEALS,

### OF THE

## STATE OF NEW JERSEY, .

### AT MARCH TERM, 1853.

---

### THE NEW BRUNSWICK STEAMBOAT AND CANAL TRANS-PORTATION COMPANY v. JOHN TIERS AND OTHERS.

1. It is not error for a judge to refuse to charge the jury upon a point of law not involved in the case, and the court which reviews the judgment will determine from the facts whether the point was involved.

2. A common carrier is not excused from his liability when the loss is occasioned by the act of God, unless the act of God is the proximate cause of the injury, nor where the negligence of himself or any other person concurs with the act of God in producing the loss. That a severe storm produced an unusually low tide, and thereby caused the carrier's barge to strike against a timber projecting from the wharf so low as in ordinary tides to be no cause of injury, will not excuse the carrier for the loss of goods occasioned by the timber piercing the vessel.

3. The doctrine that where both parties are guilty of negligence there can be no recovery, does not apply to the owner of goods delivering them to a carrier during a storm, in which it may be difficult for the carrier to protect them. If the carrier consents to receive them, he is liable for all injury after delivery.

4. The words "late partners," added to the names of the plaintiffs, is surplusage, and if not true, it is no error.

---

This was a cause in the supreme court, which had been tried at the Somerset circuit, and was removed into this court by writ of error. The errors assigned were founded

upon the exceptions taken at circuit to the charge of the judge at the circuit. The errors relied on, and the facts upon which the assignment was founded, appear distinctly in the opinions of the judges.

ELMER, J. The point most pressed on the argument, and the one involving the merits of this case, is whether the judge before whom this cause was tried was bound to charge the jury, "that although the defendants were guilty of negligence in not securing their vessel more safely, so as to prevent her injury or destruction by striking against the bulkhead or being washed by the sea, if that was their only negligence, and the vessel or cargo received no injury from either of these causes, that negligence will not render them liable for another injury to the cargo which can be attributed to the act of God."

It appears by the bill of exceptions, that the judge delivered a general charge to the jury, and was then requested by the counsel for the then defendants, the plaintiffs in error, further to charge and declare the law to be as is above stated. This he declined to do, as the bill states, because he did not consider the principles contained in the proposition, even if correctly stated, applicable to the case. The general charge is not included in the bill, as I think it ought to be, and we have no means of knowing what it was. As no part of it was excepted to, we must presume it to have been correct; and the question now before us is whether the judge was bound to charge the jury as he was requested to do.

The action was against common carriers, as such, and it is admitted that the plaintiffs made out a *prima facie* case, entitling them to recover, unless the defendants succeeded in excusing themselves, by evidence offered on their part. The goods were on board the defendants' barge, called the Albany, which may be assumed to have been in all respects a good and sufficient vessel, suitable to the business in which she was employed. They were received by the defendants' agents, without objection, and put on board some time during the sixteenth day of November, eighteen hundred and

forty-one, while she lay at the bulkhead of their dock in the North river, at New York. On the previous day, a severe gale commenced from the north-west, which increased during the sixteenth to a violent storm, and produced an unusual low tide, so that in the evening of that day the barge was driven by the wind against a piece of timber which projected from the bulkhead, thirteen feet below the top of the dock, and much below the ordinary low water, the existence of which was unknown to the defendants' agents and servants. A hole was by this timber knocked through her side, so that in a short time the barge filled with water and sunk, and the goods were spoiled.

It is assumed by the charge as proposed, that the defendants' agents may have been guilty of negligence in not securing the barge more safely, so as to prevent her from being injured or destroyed by striking against the bulkhead, or being washed by the sea; and there was certainly much evidence to induce the jury so to decide. But the point of the charge requested is, that admitting this to be so, if that was their only negligence, and neither the vessel nor the cargo received any injury from either of these causes—that is, by striking against the bulkhead, or being washed by the sea — that negligence would not render them liable for another injury to the cargo, which could be attributed to the act of God. The applicability of the charge to the case, and therefore its propriety, depended upon the assumption that there was in point of fact some other injury to the cargo, which was of such a character as might be considered as properly an act of God, and which by law would excuse the carrier. If there was no such injury, as admitting the negligence stated could be legally so considered, the court committed no error in refusing the charge as prayed. It has not been insisted, and could not be with success, that the judge is bound to state mere hypothetical points of law, however correct. The omission to charge which will be held to be erroneous, is an omission that was prejudicial to the party desiring it.

What is or is not an act of God that will excuse a com-

mon carrier, for a loss happening in consequence of it, is generally a question of law. For the better security of the public, and in consideration of the fact that the owner of the goods is usually unable to prove the cause of the loss, which is commonly known only to the carrier's own servants, who have every inducement to excuse themselves, common carriers are not only subject to the responsibility of taking all reasonable care of goods entrusted to them, but they are liable as insurers, and can only excuse themselves by satisfactory proof of one or the other of two things, namely—an act of God, or of public enemies. By the act of God is meant a natural necessity, which could not have been occasioned by the intervention of man, but proceeds from physical causes alone, such as the violence of the winds or seas, lightning or other natural accident. If the loss happen by the wrongful act or neglect of a third person, the carrier is responsible, and is to seek redress of the wrong doer. If divers causes concur in the loss, the act of God being one, but not the immediate or proximate cause, such act of God does not discharge the carrier. To have this effect, it must be one exclusive of human agency. 1 *Term. R.* 27 ; 5 *Bingh.* 217 ; 3 *Espin. R.* 131 ; 5 *Term. R.* 387 ; 8 *S. & R.* 533 ; 21 *Wend.* 190 ; 15 *Conn. R.* 539 ; 3 *Story's R., King* v. *Shepherd ;* 1 *Murph. N. C. R.* 417 ; 3 *Stew. & Port.* 135 ; 4 *do.* 382 ; 2 *Speer* 197 ; 5 *Yerger* 72, 82 ; 2 *Bail. R.* 157 ; 5 *Day.* 415 ; 3 *Zab.* 372.

Admitting that the loss in this case was occasioned not by any negligence in leaving the barge in a situation where she was liable to strike against the bulkhead, instead of securing her better, but that in point of fact the loss was occasioned by the low tide bringing her in contact with a timber projecting a foot or more in the bulkhead, and that without the concurrence of the low tide, produced by a violent storm, itself strictly an act of God, and the projecting timber which was left to project by the agency of man, was it a loss by the act of God, for which the carrier is not responsible? I am clearly of opinion it was not. The immediate or proximate cause of the loss was the projecting timber. The defendants

strenuously insist that it was not the mere influence of the storm casting the barge against the bulkhead, which produced the injury; and this they are driven to do, in the hope thus to escape the consequences of their negligence in allowing her to remain unnecessarily in a position where this might have happened. Admitting this negligence, they say it did not occasion the injury; had the bulkhead been free from defect, as they supposed, no injury would have occurred. The remote cause of the loss was undoubtedly the storm, but had there been no projecting timber, their argument is, that cause would have been inefficient—so that the really producing proximate cause was the projecting timber.

It is the duty of the carriers to provide good and sufficient docks, boats, and other implements necessary and proper for their business, and although these instruments need not be absolutely perfect, they must be free from defects seen or unseen. If defects do in point of fact exist, the carriers are not excused, even if it be shown that they have exercised extraordinary diligence to prevent them. In the case of *Backhouse* v. *Snead*, 1 *Murphy N. C. R.*, 173, it was held that where a carrier hired his vessel to be repaired by a skillful workman, who made a rudder apparently sound, but internally rotten, and the loss happened by reason of its breaking, he was responsible, though he was ignorant of the defect. This decision was in accordance with the general principle, which holds the carrier responsible for every loss produced by an accident not coming within the definition of an act of God, as for a loss occasioned by a fire which happened without any negligence on his part, or by robbers, or by the misconduct or negligence of third parties. The question in such cases is not whether there has been any degree of negligence on the part of the carrier, but whether he has shown that the proximate cause of the loss was an act of God or of public enemies. Against all other causes of loss, he undertakes to insure; and if the accident which occasioned it was not an act of God or of enemies, but was wholly without his fault, it was, at all events, his misfortune, and not the misfortune of the owner.

The argument for the defendants in this case is that inasmuch as if there had not been an unusually low tide, produced by a violent storm of wind, the barge would not have struck the timber, therefore the loss must be attributed to the storm. But if that argument was sound, it would follow that if an unseaworthy vessel should founder in a storm, the fact that she might have gone safe if the weather had remained fair, would excuse the carrier. This is not pretended to be the law. If the vessel be in fact unfit for her business, a loss arising from a storm is presumed to have been occasioned by the defect of the vessel, because it is impossible to say how far the defect contributed to the loss. Upon the like principle, if the carrier's dock be imperfect, a loss arising by the influence of a storm acting upon the imperfection, and which would not have happened in the absence of either cause, must be attributed to the imperfection. The loss is not by an act of God alone; it is produced partly by an act for which the carrier is responsible. Had there been no storm, but had the dock itself given way and sunk the vessel, or had a projecting timber before unnoticed, or believed not to be dangerous, occasioned the injury, since no act that could be called the act of God had intervened, it is undeniable that the carriers would be liable. In this case, an act of God did intervene, and was instrumental in producing the loss; but it was not the sole or proximate cause of the loss. The defendants themselves insist and assume, in the charge they desire, that the storm itself did not do the injury. Had not another instrument concurred, which proceeded from the active or passive agency of man, and for which man is responsible, there would have been no loss.

In the case of the *Trent Nav. Co.* v. *Wood*, 3 *Esp.* 127, 4 *Doug.* 287, the carrier's vessel sank by driving against a concealed anchor in the river, which belonged to another vessel, to which no buoy was attached, as there ought to have been. The plaintiffs recovered, and although it seems to have been considered that there was some negligence on the part of the master, it appears from the remarks of the judges, whose opinions are but shortly reported, that it was

held that this loss was occasioned partly by the act of man, and came within the principle of a loss by robbery, for which the carrier was responsible, whether in fault or not.

A later case of *Smith* v. *Shepherd*, *Abbott on Ship. pt. 3, ch. 4, sec. 1*, was a case where the loss happened at the entrance of the harbor of Hull. There had formerly been a shelving bank, which was rendered precipitous by a recent flood, and a vessel had sunk there which had a floating mast tied to her. The defendant's vessel struck this mast, and was thereby forced on the bank, and in consequence of the change that had taken place by means of the flood, the loss occurred. Evidence offered to show that there had been no actual negligence was overruled, and it was held that the loss having been in part produced by the floating mast which was placed there by human agency, the fact that the act of God in changing the bank was also instrumental, could not be considered as making that act the immediate cause of the loss, and therefore formed no excuse.

In the case of the *Camden & Amboy Co.* v. *Burke*, 13 *Wend.* 611, baggage of one of the passengers, the transportation of which was paid for, was injured by the breaking of a rope, by means of which it was being hoisted from the steamboat to the wharf at Bordentown, and it was held that the company were answerable as common carriers, although the defect was unknown to their agents and was not discoverable on inspection, and the loss happened without any culpable negligence or want of care. The same principle was decided in the case of *De Mott* v. *Laraway*, 14 *Wend.* 225.

On behalf of the defendants, the now plaintiffs in error, much reliance has been placed on the case of *Amies* v. *Stevens*, shortly reported, (1 *Strange*, 128,) as follows: "The plaintiff put goods on board the defendant's hoy, who was a common carrier. Coming through a bridge, by a sudden gust of wind the hoy sunk, and the goods were spoiled. The plaintiff insisted that the defendant should be liable, it being his carelessness in going through at such a time, and offered some evidence that if the hoy had been in good order, it would not have sunk with the stroke it received, and from

thence inferred the defendant answerable for all accidents, which would not have happened to the goods in case they had been put into a better hoy. But the Chief Justice (Sir John Pratt) held the defendant not answerable, the damage being occasioned by the act of God. For though the defendant ought not to have ventured to shoot the bridge, if the general bent of the weather had been tempestuous, yet this being only a sudden gust of wind, had entirely differed the case, and no carrier is obliged to have a new carriage for every journey. It is sufficient if he provides one which without any extraordinary accident, such as this was, will probably perform the journey."

It having been held as a matter of fact, that the hoy was in proper order and fit for the business in which it was employed, this case decides that a sudden gust of wind which sunk it while in the act of passing through a bridge, against which, as it would seem, the wind drove it, was to be regarded as an act of God, for which the carrier was not responsible, and there can be no doubt of the correctness of the decision. It being necessary for the hoy to pass through the bridge to make the contemplated voyage, if a proper time was taken to do it, a sudden storm driving it against the bridge, was just as clearly the proximate cause of the loss as a sudden storm at sea which should drive a ship upon a rock. The application of it to the present case, which counsel seek to make, is that the bridge being the work of man, there was here the intervention of human agency, and that the striking of the hoy against it was therefore as much the immediate or proximate cause of the loss, as the striking of the barge, in the case before us, against the timber projecting out of the bulkhead. Had there been no negligence on the part of the defendants in this case, and a sudden storm had driven their barge against a properly constructed bulkhead, and thus occasioned the loss, the cases would have been alike. But the defendants, admitting such negligence as if the damage had been occasioned by the vessel being driven against the bulkhead where it was perfect, would have rendered them liable, insist that the loss did not thus happen, but that it happened

by the storm driving out the water from the dock, and thus bringing the vessel into contact with a timber not otherwise dangerous. There is a plain distinction between an injury caused by a sudden gust of wind driving a vessel against a bridge, or bulkhead, or other erection, which although the work of man, is properly placed and built for the public benefit, and one which is occasioned by the same gust driving her against something which is there by the fault or at the risk of the owner of the vessel or of a third person. In the former case, the injury is to be attributed, so far as regards the question who is responsible for it, solely to the gust of wind—the act of God; while in the latter there is the intervention of an act of man, which concurs in producing it, and against which the carriers undertake to insure.

It is, however, urged for the defendants that this was a public dock, over which they had no control, but which belonged to the city of New York, and was regulated by the public authorities thereof; and also that if they are to be held responsible for its efficiency, it ought not to be taken for granted that the projecting timber was of such a character as to be considered a defect, for the consequences of which they are to suffer. Whether it was a public or private dock, it seems to me, can make no difference. When the defendants rented it, or obtained leave from the city to use it for the purposes of their private business, it became as much their private property, so far as persons transacting business with them were concerned, as if they had owned it. That a timber projecting nearly a foot from the face of the bulkhead, and capable of making a hole through a well built vessel at one blow, as defendants say this did, was a defect, even although it was below the ordinary low water mark and not capable of doing injury at common tides, seems to me too obvious to be a subject of doubt. But taking it for granted that the dock was in all respects sufficient for the business in which it was employed, I am of opinion that there was such evidence of negligence on the part of the defendants, and of the connection of that negligence with the injury that happened, as to forbid the court and jury from

assuming that no injury was thereby produced to the vessel or cargo. Unless the facts of the case would justify the jury in so deciding, the court would have done wrong to submit to them the question whether there was " another injury to the cargo which could be attributed to the act of God." If there was proof of negligence, the injury is to be attributed to that, and a charge which assumed to the contrary would have been, as the judge considered this, inapplicable to the case.

In the case of *Siordet* v. *Hall*, 4 *Bingh.* 607, it was held, that although a hard frost may be considered an act of God, yet a damage to goods on board a steam vessel, produced by the leaking of a pipe, which was cracked by the frost, was a loss by negligence, the master being bound to guard against the known effects of frost by keeping out the water at a time when it was liable to freeze, although the water was let in according to the usual practice. In the case of *Davis* v. *Garrett*, 6 *Bingh.* 716, where a master had deviated from the usual course of his voyage, and damage was occasioned by tempestuous weather, in itself the act of God, the court held that the proximate cause of the loss was the wrongful act of the master in deviating from his proper course, for which he was responsible. And the same principle has been applied to a case of carriage by land. *Powers* v. *Davenport*, 7 *Blackf. Ind. R.* 497.

The evidence in this case was that the gale commenced on the fifteenth, and continued through the sixteenth day of November, on which last day the goods were received and put on board the barge. An experienced captain navigated the vessel, but while laying at the bulkhead she was not in his charge. According to the testimony of the defendant's agent and witness, Henry H. Green, she was in his charge, and for the reason, it would seem, that the captain, although a good seaman, could not write his name. Notwitstanding the gale, this agent received the goods and had them placed on board of her, and neglected to remove her and place her in a more secure position, although advised to do so and warned of her danger. To one of the witnesses who spoke

to him on the subject, he replied that he knew his own business, and the witness might mind his. Now to assume that the injury was not occasioned by this negligence, because the exposure of the barge to the upper and well constructed part of the dock or to the waves does not appear to have produced it and because it would probably not have happened if the very low tide had not brought her in contact with the projecting timber, is assuming too much. The answer to this reasoning is that given by the court in the case of *Davis* v. *Garrett*—"That no wrong doer can be allowed to apportion or qualify his own wrong." This injury happened while his wrongful act of leaving the barge in an exposed situation was in operation, and would not have happened if he had used proper precaution; or to give the most favorable construction to the case, it is undeniable that if there had been no negligence in exposing her to the dangers which in point of fact caused no injury, she might have escaped that which did. The circumstances were such that no one could say that the negligence did not aid in producing the loss. The jury, therefore, could not legally say by their verdict that it did not, and had they done so, it would have been the duty of the court to set their verdict aside. If this be so, as seems to me very clear, the court would not have been justified, and certainly was not bound, to give them a charge which left it to them to find a verdict the law and facts of the case did not warrant.

The American editor of *Smith's Leading Cases*, in a valuable note to the case of *Coggs* v. *Bernard*, which seems very fairly to give the result of the cases, states the law as follows: "If the carrier prove that the injury or loss was occasioned by one of those occurrences which are termed the acts of God, *prima facie* he discharges himself, and the onus of proving that the alleged cause or agency would not have produced the loss or injury without his negligence or defective means, is thrown upon the plaintiff. But if the plaintiff can prove such negligence or defective means on his part as that without their co-operation the violence of nature might not have resulted in occasioning a loss, he shall recover.

The true way of looking at this is not that the carrier discharges his peculiar liability by showing an act of God, and is then made responsible as an ordinary agent for negligence, but that the intervention of the negligence breaks the carrier's line of defence, by showing that the injury or loss was not directly caused by the act of God, or more correctly speaking, was not the act of God."

The natural effect of the storm which occurred in this case, and which was not sudden, but of the approach of which there was full warning, was, as all the witnesses testify, to produce a very low tide; and this effect it was as much the duty of the carriers to guard against by all proper precautions, as any other. Negligence, indeed, of such a description as that without its co-operation the violence of nature might not have resulted in loss, was not only fully proved, but was admitted and made the basis of the charge asked for.

Had the court been requested to say that if the jury were of opinion the loss would have certainly happened had there been no defect and no negligence—or as the court put it in the case of *Davis* v. *Garrett*, "not only that the same loss *might* have happened, but that it *must* have happened," then they might attribute it to such an act of God as would excuse, the charge would have been probably correct. If a stroke of lightning had occurred and done the injury, the negligence might be considered as having had no influence in producing it. Judge Breckenridge held in the case of *Bell* v. *Reed*, 4 *Binn.* 130, that if goods were laden on board an unseaworthy ship even a stroke of lightning would not excuse. This was going further than sound principle will justify. 2 *Watts* 114; 8 *Ib.* 480; *Story on Bailm.*, § 414, c.; *Ang. on Car.* §§ 203 *to* 209. But where one of the natural results of the negligence was to expose the goods to the very peril that occurred and proved the means of a loss, it will be very unsafe to speculate upon the possibility that the same peril might have produced the loss without any negligence. In such a case the fact of negligence justly precludes the carrier from setting up the peril as an inevitable accident. To allow him to do this would expose the owner to the very

difficulties the law, which deems the carrier an insurer against every cause of loss but two of a definite and specific character, was designed to guard against. Such a charge as the law and facts of the case would have justified, was not asked for in this case, but one that was not warranted by either.

Another error assigned is that the judge was requested to charge and declare the law to be, "that the teas having been put on board the barge Albany while she was, as it is alleged, negligently exposed to the damage she received, if the jury consider that both parties were equally to blame in the loss of the teas, then the plaintiffs cannot recover;" whereupon he declared his opinion to be, that the law as to this point was, that where both parties were equally culpable, neither party could recover damages from the other for any injury sustained, but that he did not consider this principle of law applicable to the case then under consideration.

The teas in question were received by defendants' agents without objection, and were delivered in the usual manner by cartmen, who were directed to take them by the agent of the plaintiffs. The moment they were received, they were at the risk of the carriers, who should have declined taking them, if not able properly to take care of them. There was no interference of the plaintiffs' agent with the disposition of them when received, so that in point of fact there was no blame to be imputed to him, and the charge asked for was wholly aside from the case.

It was also objected that the judge erred in refusing to nonsuit the plaintiffs. The action was brought in the name of John Dickson and others, "lately trading under the name, style, and firm of Dickson & Tiers." By the articles of copartnership, it appeared that the partnership expired on the first day of January, and inasmuch as the suit was commenced by a summons returnable to February term of the same year, and of course tested of a term prior to January, it was insisted that the suit must be presumed to have been commenced before the partnership terminated, and the description "lately trading," not being true, the plaintiffs

ought to be called. This objection was not much insisted on, and is wholly untenable. The description of the parties added to their christian names, was entirely surplusage. Nor does it follow that because the writ was tested before the termination of the partnership, the action was commenced so soon—it might have issued after the first of January. And besides, the description was true, even if the writ did issue before the expiration of the partnership. That it existed when the cause of action arose, is undeniable, and when subsequently the action was brought in the names of all the partners, they were correctly, but unnecessarily, described as " lately trading, &c.," whether it had expired or not. The phrase " lately trading," did not necessarily imply that they did not continue to trade in the same way.

I am of opinion that there was no error in the ruling of the judge, and that the judgment ought to be affirmed.

HAINES, J.   The defendants in error brought their action against the plaintiffs in error, and thereby sought to charge them as common carriers, with the loss of a quantity of teas, delivered to them to be transported from the city of New York to Philadelphia.

When the plaintiffs below had rested their cause, the defendants below moved the court to non-suit, because it appeared in evidence that the co-partnership of the plaintiffs was to commence on the first day of January, 1841, and to continue for the space of three years; that the action was brought to the February term, 1844; and it was urged that inasmuch as the writ must have been tested in the November term next preceding, and before the expiration of the partnership, the action should have been in the names of the partners, as members of an existing co-partnership, and not as late partners. The refusal of the court to non-suit the plaintiffs for this reason, is now assigned for error.

It is a sufficient answer to this objection, that the writ was not produced, and it did not appear how the plaintiffs were styled in it, or in what character they sued it out. If the writ was in their name, without any addition or description,

the declaration might lawfully designate them as persons lately trading, for that writ did not tend to enlarge, but to narrow the demand which the defendants were called upon to answer. 1 *Chit. Pl.* 253.

In the absence of proof, we cannot presume that the action was commenced improperly.

The next error assigned, is the refusal of the judge to charge the jury upon a point raised by the defendants' counsel.

To determine the weight of this objection, it will be necessary to examine the testimony, to see whether the point raised was material, and pertinent to the issue.

In November, 1841, the defendants below were the proprietors of several lines of transportation, whose business it was to carry goods and merchandize for freight and hire between the cities of New York and Philadelphia, for all persons who applied to them for that purpose, and who were willing to pay the freight. They were, therefore, in the full and true sense of the term, common carriers, and subject to all the responsibilities of that class of persons.

On the fifteenth day of November, there arose over the city and harbor of New York a storm of wind, at first blowing moderately, then freshly, and increasing in violence till at noon of the sixteenth it became a perfect hurricane; and so continued until about sun-down, when it subsided. Commencing to blow from the north-west, it gradually veered westward until it blew directly into the slips on the west side of the city. The effects of this gale were an unusually low tide, a heavy rolling sea, and great peril to the shipping exposed to its violence. During this time "The Albany," a barge owned by the defendants, and used by them in their business of transportation, was moored at the bulk-head between piers No. 2 and No. 3, on the North river, with her broad-side to the gale. She was fastened with breast and spring lines to the bulk-head, and by lines to pier No. 2, and to a Dutch ship lying at pier No. 3; and was protected by fore-and-aft fenders running along her side, and by perpendicular fenders outside of them. During most of the day

of the sixteenth,.she was hauled off from the wharf four or five feet, or as the lines would render, she approached within a foot of it and then was hauled off.

The pumps were sounded from time to time during the day, and between .four and five o'clock in the afternoon the barge was found to be perfectly tight. The clerk of the company took the sole charge of her, and superseded the captain, who worked under his direction; and they continued to take in the cargo, using gang-planks for safety. The violence of the gale interrupted, in a measure, the lading of the heavier articles, but the lighter part of the cargo was taken in without great difficulty. It appeared in evidence that the barge would have been less exposed if she had been moored to the pier, or lain along side of the Dutch ship, with her stern or stem to the wind.

Some of the witnesses, the officers of the boat chiefly, testified that she was perfectly safe from the effects of the storm while lying at the bulk-head, and that they were not apprehensive of any danger, nor warned by any one of danger, or advised to move her; and that she could not have been moved with safety after the gale commenced. ·Others testified, that the vessel was not in a place of safety, and that any person of ordinary skill and prudence would have changed her position, and that she could have been moved with safety to the pier after the gale commenced and the .danger became apparent; and that the clerk was so advised, but that he rejected the advice, declaring that he knew his own business, and that the witness might mind his.

During this time, the teas of the plaintiff were taken on board, and towards evening, the'loading being completed, the captain laid on the upper deck hatch, secured the falls and sent a man below to get out the tow-lines, to be ready to go out with the steamer, which was expected to be along a little after six o'clock. The hand sent below came on deck and reported that he had been up to his knees in water.

The barge was now discovered to be settling, and every effort made to prevent it and to save the cargo; but in about an hour she sunk, and the teas were almost wholly lost.

The vessel was subsequently raised, and, on survey, a single hole was discovered in her starboard or right side, about mid-ships, and a little above the bilge, having the appearance of having been made by a large blunt piece of timber. She was in every other respect sound and strong, and when the cargo was out, took in no water at all; and in that condition was towed to New Brunswick for repairs. On examination of the dock, a piece of timber, the butt of which had not been cut off, was found to be projecting eleven inches beyond the face of the bulk-head, about sixteen feet from the top of the dock, and five feet below low-water mark. this projecting timber corresponded by actual measurement with the hole in the barge, and is agreed on both sides to have been the proximate cause of the injury.

The question was, whether the defendants, under these circumstances, are responsible to the plaintiffs for the loss of the teas?

Common carriers are held responsible as insurers, and liable for the safe carriage of goods against all losses, except such as arise from the act of God or the public enemy. 1 *Smith's Leading Cases*, 93, and cases there referred to; *Angell on Carriers*, § 46–67; *Story on Bailment*, § 490, 511; 2 *Kent's Com.*, 597; *Mershon* v. *Hobensack*, 2 Zab. 372; *Smith on Contracts*, 362. The policy of this rule has been too long settled and acted upon to be questioned at this day. The nature of the employment, the great confidence which is necessarily placed in the carrier, the vast amount of property committed to his care, the ease with which he might frame excuses for negligence, and the impossibility in most cases in proving his want of care or of skill, have rendered it necessary to establish such a rule. At first view, it may seem hard, and even oppressive, yet the experience of ages has proved it to be both salutary and just. The carrier, acting upon this well known principle of law, and taking compensation adequate to the risk, as well as for the labor, has no cause of complaint.

The defence in the case was placed upon the ground that

the loss was occasioned by the act of God, and this necessarily leads to an inquiry into the meaning of that phrase.

The term has received a variety of definitions, differing rather in their mode of expression than in the substance of their signification. It is said to be that which is occasioned exclusively by the violence of nature—by that kind of force of the elements which human ability could not have foreseen or prevented, such as lightning, tornado, sudden squall of wind, and the like. Again, it is said to be at least *an act* of nature, which implies an entire exclusion of all human agency, whether of the carrier himself, or of third persons. It is called a disaster with which the agency of man has nothing to do.

Again, it is defined to be a natural necessity, which could not have been occasioned by the intervention of man, but proceeds from physical causes alone.

If, therefore, the loss arose exclusively from the violence of nature, the defendants are not liable. But if it were caused by that kind of force of the elements which could have been foreseen or prevented, or by the force of the elements combined with such act of man as could have been avoided, the defendants are liable.

Such is the law of the land as applicable to this case, and as no exception was taken to the charge delivered by the court, it is to be presumed that it was so declared to the jury.

The counsel of the defendants, at the close of the charge, asked the judge further to charge and to declare the law upon the evidence given to be: "That although the defendants were guilty of negligence in not securing their vessel more safely, so as to prevent her injury or destruction by striking against the bulkhead, or being washed by the sea, if that was their only negligence, and the vessel or cargo received no injury from either of these causes, that negligence will not render them liable for another injury to the cargo which can be attributed to the act of God."

If by this proposition it is meant that if the loss were occasioned exclusively by the act of God, and not by any act

or negligence of the defendants, then it is correct and perti‑ nent to the issue, and the jury should have been so charged.

That was, however, the very question in the cause, and it is not to be supposed that it was omitted in the charge, and that the jury was left without instruction upon it; or that if they were improperly instructed, exception would not have been taken to it. The state of the case does not contain the charge of the court nor show any error in it, and error is not to be presumed to exist. *Quod non apparet non est.*

If by the proposition the defendants meant that they are not responsible for an injury which *can be* attributed to the act of God, as distinguished from one that *must be* attributed to Him, and which no one could dispute, it is wrong, and the court might properly decline so to charge, or with equal pro‑ priety have charged against the defendants upon it.

If it were meant that the court should assume that the pro‑ jecting timber was no part of the bulkhead, the proposition cannot be maintained, for that was a question of fact about which there could hardly be a dispute, or if disputed, to be left to the jury to determine.

If the defendants meant that they were not responsible for the injury done by the projecting timber, and wished the court so to instruct the jury, they were mistaken, for if the timber were a part of the bulkhead, the defendants are re‑ sponsible for the injury caused by it, although it had never been seen by them or its existence known to them. It was their dock, by whatsoever tenure they held it, used by them in their business, and as such, a part of their machinery, ne‑ cessary to the safe loading of the goods. For its defects they are answerable, although those defects were latent. The carrier by water is bound as well to provide safe wharf‑ age as he is to furnish seaworthy vessels and skillful hands. *Burk* v. *Cam. & Am. R. R. Co.*, 13 *Wend. R.* 611 ; *Story on Bailm.*, § 571, *a ;* 14 *Wend. R.* 224 ; *Siordet* v. *Hall,* 4 *Bingh.* 607. It is his misfortune not to have known of the defect, but that affords him no excuse. The owner of the goods is not to be subjected to such risks. He is not bound to sur‑

vey the wharf nor to examine the vessel. That duty is devolved entirely upon the carrier.

If the injury arose from the gale or the sea as the remote, and the timber as the proximate cause, it does not come within the definition, for it was not caused exclusively by the violence of nature; it was not a natural necessity produced by physical causes alone, and with which human agency had nothing to do. It may be true as the witnesses testify, that but for the storm the barge would have been safe; and equally, true, that if the timber had not been left projecting no loss would have occurred. The jury, therefore, might lawfully infer that the loss arose from the combination of the violence of nature and the negligence of man. *Forward* v. *Pintard*, 1 *T. R.* 27; *McArthur* v. *Sears*, 21 *Wend.* 190; *Siordet* v. *Hall*, 4 *Bingh.* 607; *Trent Navigation Co.* v. *Wood*, 3 *Esp.*; *Hyde et al.* v. *The Navigation Co.*, 5 *T. R.* 389–400; *Ryley* v. *Horne*, 5 *Bingh.* 217.

The other evidence of the management of the barge was sufficient also to justify the verdict, upon the ground of negligence.

The proposition of the defendants is somewhat obscured, if not ambiguous, and a court is not bound to arrest the progress of a cause to analyze the terms of an ambiguous, or to speculate upon the results of a hypothetical question. The party has a right to the charge of the court upon every point pertinent to the issue, but it should be presented in plain and explicit terms, and upon the case as made, It is not the duty of the court to charge upon a mere hypothesis, nor would it be proper to divert the attention of the jury from the facts proved. There was no dispute about the loss of the teas, and the defendants sought to excuse themselves by showing that it was occasioned by the act of God, but so far failed to prove it to have been done by the exclusive violence of nature, as to authorize the verdict rendered; and it is no ground of error that the court refused to charge as requested by the defendants' counsel.

The defendants, by their counsel, requested the court further to charge, " that the teas having been put on board of

New Brunswick Steamboat Company v. Tiers et al.

the barge Albany while she was, as is alleged, negligently exposed to the damage she received, if the jury considered that both parties were equally to blame in the loss of the teas, then the plaintiffs cannot recover." The judge thereupon declared that the law upon this point was, that where both parties are equally culpable, neither party could recover damages from the other for the injury sustained; but that he did not consider the principle of law applicable to the case under consideration. This opinion of the court is also assigned for error.

That part of the opinion which declares that no recovery can be had where both parties are equally culpable, is unquestionably correct. That part which declares the principle of it not applicable to the case, is certainly not wrong. It is in evidence that the defendants received the teas without any objection, and the moment they took them into their custody they became responsible for their safety. *Angell on Carriers*, §§ 129 *and* 180.

It was the duty of the defendants' officers, and not of the plaintiffs' agent or cartmen, to determine whether it was safe to receive them.

Their skill and judgment were to be exercised as to the propriety of taking in the cargo; if they misjudged, their principals are liable.

There is therefore no error in this.

Let the judgment be affirmed, with costs, and the record be remitted to the Supreme Court, to be proceeded upon according to law.

Judgment affirmed.

*For Affirmance*—Judges ARROWSMITH, ELMER, HAINES, OGDEN, CORNELISON, VALENTINE, HUYLER, POTTS and WILLS.

*For Reversal*—None.