45 N.J. Super. 409 (1957)
133 A.2d 336
MELVIN W. HOPLER, PLAINTIFF-RESPONDENT,
v.
MORRIS HILLS REGIONAL DISTRICT, A BODY CORPORATE OF THE STATE OF NEW JERSEY, ALSO KNOWN AS BOARD OF EDUCATION, MORRIS HILLS REGIONAL HIGH SCHOOL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 3, 1957.
Decided June 20, 1957.
*411 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Francis J. Beyrent argued the cause for defendant-appellant (Messrs. Schenck, Smith & King, attorneys).
Mr. Elden Mills argued the cause for plaintiff-respondent (Messrs. Mills & Mills, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal by defendant, an upland property owner, from a judgment of the Law Division of this court, sitting without a jury, in the amount of $1,375, awarded to plaintiff, a lowland property owner, for damages sustained when the foundation wall of his home collapsed from the force of surface waters during the hurricane "Connie."
The defendant, in the spring of 1954, constructed an athletic field on a 10- or 11-acre tract to the northeast of plaintiff's premises, separated from it by a wooded area 150 feet wide. Prior to the athletic field construction the tract had naturally sloped downwardly toward the intervening wood lot, and continued in its down-slope toward the plaintiff's *412 premises. In the construction, however, soil was taken from the tract's higher end and used to fill in the lower end, thus leveling it except for a slight rise in the center with a tapering off toward the sides for the drainage of surface waters. Additionally, for adequate drainage of the surface water over the westerly half of the athletic field there was installed a system of five catch basins, connected by means of a series of pipes to a drainage outlet where the water discharges into a riprap of rubble stone to retard its flow. This outlet is about 25 feet higher in elevation than plaintiff's house and approximately 300 feet from it.
On August 13, 1955, more than one year subsequent to the leveling of the athletic field and the installation of the drainage system, hurricane "Connie" struck with all its fury and plaintiff's foundation wall crumbled  so he testified  from the waters rushing from defendant's drainage outlet. According to his testimony, he was awakened at 4:00 in the early morning to find that the "whole rear of the house was all pushed in" and "the cellar was full of mud and water" and he saw "a steady stream of water * * * just like a small brook." When he followed the water to its source he found it was coming out of the drainage outlet on defendant's property and he then worked until 6:00 or 7:00 in the morning to build a barrier which temporarily diverted the flow of water away from his house. He testified that the water was not from natural drainage, but exclusively from the drainage outlet; and that it passed over a ditch which had been dug prior to the mishap as the consequence of a complaint by him that water was flowing toward his property. The ditch, he testified, had gradually "filled up with silt, sand and mud" during previous rainstorms. He admitted, however, that prior to this mishap there had been "no water to come up close to the house."
Mr. Waer, a mason contractor, and plaintiff's brother-in-law, testified that plaintiff's basement wall had been constructed with eight-inch blocks and was "a very safe wall." However, although he was at plaintiff's premises 15 to 30 minutes after the mishap, when asked whether he could *413 see where the water was coming from, he testified "Just out of the woods."
The testimony given on defendant's behalf was that the intercepting ditch was not dug because of a complaint but to lay a wall footing for a fence; that after the hurricane there was no evidence of erosion which would indicate that water had passed over this 20 inch deep ditch rather than along it and away from the plaintiffs premises; and that the ditch was not filled with silt at the place plaintiff claimed.
Mr. Burris, an engineer, testified that the flow-off of water from the field in its present state is no different from that which occurred in its original natural state. This testimony was later modified somewhat to the effect that there is "no appreciable increase of run-off" but a concentration of it at the drainage outlet. He also testified that, in his opinion, the wall collapse was not occasioned by surface water drainage from the athletic field, but subsurface pressure which had built up because of the percolation of rain waters into the clay soil that surrounds plaintiff's house; that this pressure could have been alleviated and the damage averted by a drain pipe around the base of its foundation; and lastly, that if the water had been entering the plaintiff's basement at the rate claimed it would have filled within an hour.
The defendants argue three grounds for reversal: (1) that plaintiff failed to establish that the alleged negligence was the proximate cause of his injury; (2) that the trial court erred in failing to consider the hurricane "Connie" to be an extraordinary act of nature not reasonably to be guarded against  more familiarly put, "an act of God"; and (3) that the trial court's conclusions were not supported by the evidence. The latter ground merely restates the contentions previously made and will not be treated separately.
The litigants agree that the present case is controlled by the principles of law set forth and reconsidered at length in two recent cases of Yonadi v. Homestead Country Homes, 35 N.J. Super. 514 (App. Div. 1955), on petition for recall of mandate, 42 N.J. Super. 521 (App. Div. 1956); and Armstrong v. Francis Corp., 20 N.J. 320 (1956). In the *414 Yonadi case, Judge Clapp reviewed the decisional law of this State which until that time had subscribed to the so-called "common enemy" rule, Town of Union v. Durkes, 38 N.J.L. 21 (Sup. Ct. 1875). This rule recognizes the often harmful effects of surface waters and upholds each landowner's privilege to rid his land of them by any means he chooses. Judge Clapp there stated that "The general rule is that neither the diversion nor the altered transmission, repulsion or retention of surface water gives rise to an actionable injury," Bowlsby v. Speer, 31 N.J.L. 351 (Sup. Ct. 1865). He observed, however, that to this general rule has been engrafted the exception that "a defendant renders himself absolutely liable if by means of * * * an artificial device [such as drains, ditches, and other contrivances] he causes surface water to be carried in a body large enough to do substantial injury (usually drainage from a large tract) and thereby casts it on plaintiff's lands away from where it otherwise would have flowed." Yonadi v. Homestead Country Homes, supra, 35 N.J. Super., at page 519.
Subsequently, however, in the Armstrong case, Justice Brennan, speaking for a unanimous court, observed that while our decisions have long recited the common enemy rule, the exception set forth in the Yonadi case and others are in fact more closely reconciled with the more realistic doctrine of "reasonable use." He states, as his opinion, that these were but applications of the reasonable use rule applied under the guise of exceptions to the common enemy rule. He then concluded that the court would adhere in terms as well as in actual practice prospectively to the doctrine of "reasonable use." Thus, New Jersey, by the Armstrong case, has adopted the rule of "reasonable use" which provides "that each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, but incurs liability when his harmful interference with the flow of surface waters is unreasonable." Armstrong v. Francis Corp., supra, 20 N.J., at page 327; vide, "Interferences with Surface Waters," 24 Minn. L. Rev. 891, (1940), Prosser, Torts *415 (2d ed. 1955), sec. 72, p. 415; Restatement, Torts, sec. 833, p. 269, (1939); Annotation, 12 A.L.R.2d 1338. This rule in its application has the particular virtue of flexibility, each case presenting questions of fact as to the amount and character of harm caused, its foreseeability, and the purpose or motive of the possessor in dispelling water from his property, as well as other relevant matters.
The application of this principle of law to the facts found by the trial court in the instant case brings us to the same result. The questions posed for review are principally factual in nature and the trial court's conclusions as to them will not lightly be disturbed unless these conclusions are so unsupported by the evidence as to offend the interests of justice. New Jersey Highway Authority v. J. & F. Holding Co., 40 N.J. Super. 309, 317 (App. Div. 1956). As to the determination of causation, the factor of credibility played an important role. The trial court in his determination chose to believe the plaintiff, the only eyewitness to the mishap, that the basement wall was pushed in because of the volume of surface water directed toward it, and that in seeking a method to stem the onrush of water the plaintiff found the source to be the "steady stream of water coming out of the open drain." Also, that the flow of the water was not stemmed by the ditch, which had filled with silt and mud, and though its force was appreciably spent while flowing down the hillside, the water nevertheless reached his house as a "steady stream." The testimony offered to refute the plaintiff's testimony is that of witnesses who viewed the scene only after the storm had subsided and found no evidence of the waters having passed over the ditch, or of silt and mud in it, and the testimony of an expert witness that the more likely cause was subsurface pressure. We find no convincing reason for disturbing the trial court's conclusions as to the cause of plaintiff's damages.
In support of defendant's contention that "Connie" was an unforeseeable "act of God" defendant relies principally upon Bauer v. 141-149 Cedar Lane Holding Co., 42 N.J. Super. 110 (App. Div. 1956), affirmed 24 N.J. *416 139 (1957), where this court stated that the hurricanes "Edna" and "Connie" were extraordinary acts of nature, "not reasonably to be guarded against." In the context of that case  where a cellar wall of leased premises was to be coated with a water-proofing compound to keep out water seepage and dampness * * * the hurricanes were not reasonably to be guarded against. But that conclusion is not so easily reached in the instant matter where the problem is the disposal of surface water, and the consequences of the system used might well result, as they did here, in the destruction of the foundation wall of the lowland house. It is true that there was no damage to plaintiff's house for more than a year after the construction of the athletic field, and this is a compelling factor. There is conflicting testimony of an earlier complaint but we find it to be unconvincing. However, can it be seriously contended that one can point a drain outlet, fed by five catch basins, as a cannon, at his neighbors land and then plead surprise when a heavy rain, or even a hurricane, provides the ammunition for the resulting damage? We think not. The trial court concluded that the damage to plaintiff's house was not caused solely by an act of God, but that a contributing cause was the collection of surface waters expelled through an artificial device. It has long been settled that when there has been a finding of wrongdoing which is an efficient and cooperative cause of the mishap, the wrongdoer is not relieved from liability by proof that an act of God was a concurring cause. New Brunswick Steamboat Canal Transp. Co. v. Tiers, 24 N.J.L. 697 (E. & A. 1853); Van Cora v. Trowbridge Outdoor Adv. Corp., 18 N.J. Super. 1, 4, (App. Div. 1952).
We are of the view that the trial court properly concluded that under the facts here present the damage to neighboring property from the accumulation of surface waters on defendant's land during the early stages of hurricane "Connie" and their propulsion onto the plaintiff's land by the drainage system defendant had installed was reasonably to be guarded against by the defendant.
Affirmed.