120 N.J. Super. 164 (1972)
293 A.2d 450
MAHLON V. HAMLIN AND HELEN HAMLIN, PLAINTIFFS,
v.
CONSTANTINE MATARAZZO, JR., CYPRESS CONSTRUCTION CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, MAYOR AND COUNCIL OF THE BOROUGH OF NORTH CALDWELL, PLANNING BOARD OF THE BOROUGH OF NORTH CALDWELL, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided June 30, 1972.
*167 Mr. Harvey R. Pearlman appeared for plaintiffs (Messrs. Friedman, Kates & Uscher, attorneys).
Mr. Herbert Kramer, appeared for defendants Constantine Matarazzo, Jr., and Cypress Construction Co., Inc.
Mr. John J. Mc Donough, appeared for the defendants Mayor and Council of North Caldwell and Planning Board of North Caldwell.
HANDLER, J.S.C.
This is an action in lieu of prerogative writs challenging the validity of the tentative approval of a proposed subdivision under the Municipal Planning Act, L. 1953, c. 433; N.J.S.A. 40:55-1.1 et seq. Plaintiffs are the owners of a lot and dwelling in the Borough of North Caldwell. Defendant Matarazzo is the present owner and *168 defendant Cypress is the contract purchaser of the proposed subdivision. Defendant Planning Board of North Caldwell initially approved the plat and this was affirmed on appeal by defendant, the Mayor and Council of the Borough of North Caldwell. The parties have moved for summary judgment.
The initial application was for the tentative approval of a plat denominated Wind Ridge South Section II. It envisaged the subdivision and construction of 43 single residence structures on the Matarazzo tract, constituting approximately 28 acres of undeveloped farm land. Plaintiffs' property lies at the lowest elevation of a large water shed or drainage area which includes the Matarazzo tract. Surface waters from this tract flow through a natural drainage ditch called Greenbrook which meanders from the Matarazzo farm on a winding course through public lands owned by the County of Essex, thence through lands located in the adjoining Township of Cedar Grove, returning to defendant borough and through a developed residential area known as "Tall Timbers" which includes plaintiffs' residence. Greenbrook cuts through plaintiffs' property.
When Tall Timbers was developed the water course over the lot now owned by plaintiffs was realigned. This lot was conveyed in 1955 to plaintiffs' predecessor in title. Plaintiffs apparently acquired their title in 1960. On the property adjacent to that of plaintiffs this water course has been enclosed in a concrete pipe or culvert so that waters passing through this pipe are discharged into the drainage channel in its natural and unimproved condition as it crosses plaintiffs' property. Over the years the discharge of these waters onto the Hamlin property has substantially widened and deepened the bed of this ditch and has caused extensive erosion of plaintiffs' land.
The planning board met on July 21, 1971 to consider the application by Cypress. The plaintiffs objected at that time to the subdivision for the reason that it could not be adequately drained and that it would greatly augment the discharge *169 of draining waters onto their property and exacerbate the erosion of their land. Pursuant to N.J.S.A. 40:55-1.18, the board on July 28, 1971 adopted a resolution granting tentative approval of the plat subject to certain modifications not pertinent to this litigation. The only reference in the proceedings to the overall drainage situation was contained in a letter dated April 20, 1971 from the borough engineer to the effect that Wind Ridge South Section II could be drained without any problem and that there will be no effect on Greenbrook. The factual basis for this conclusion was not adumbrated and there was no mention of any possible erosive or flooding effect on low-lying landowners as a result of the construction of the proposed subdivision. The board itself did not make any factual determinations and its resolution does not indicate whether it considered the adequacy or feasibility of drainage plans, or the impact of draining waters on other properties.
Pursuant to N.J.S.A. 40:55-1.19 the Hamlins appealed this action to the Mayor and Council of the Borough of North Caldwell and a hearing was held on August 10, 1971. A professional engineer, Alonzo Lawrence, testified for plaintiffs. He stated the Hamlins' property was at the bottom of a drainage area of some 165 acres and expressed the view that the construction of 43 homes will materially affect the erosion condition of the Hamlin property. The basis for this conclusion was that at the present time the rate of absorption of surface water on the Matarazzo farm was estimated at 70% but that with the completion of the proposed development this rate of absorption would be reduced to 6%; thus both the volume and velocity of the surface run-off will increase and the erosion along the banks of the drainage ditch through Hamlins' property will be aggravated. On cross-examination Lawrence conceded that if the drainage brook had been enclosed years ago, none of the property would have been lost to erosion. At the conclusion of his testimony the borough engineer stated that he *170 differed with Lawrence's assessment of the amount of the drainage and other factors but had no other comments at that time.
Upon completion of the hearing the mayor and council affirmed the recommendation of the planning board that the subject subdivision be approved and dismissed the appeal of the Hamlins. Included in their resolution were the following findings: (1) the borough engineer has reported that the drainage area of the premises in question is through the existing water course extending through the Ruffalo [i.e., Tall Timbers] development; (2) that a well defined and active water course, known as Greenbrook, has existed over said Hamlin's land, and that the watershed area of the Wind Ridge South Section II is naturally drained through Greenbrook; (3) said Hamlin is under a legal duty to protect his property along said water course; (4) the development of the property delineated on said map for one-family homes is a reasonable use of said premises; (5) the use of said water course for the purpose of drainage of said premises is a reasonable use of said water course.
In this action plaintiffs press the objections initially raised before the planning board. They contend in effect that the tentative subdivision approval is invalid because there was not considered or included therein as a general term or condition any provisions for drainage; and that the tract cannot be subdivided and developed without creating a serious problem of erosion. Defendants on the other hand argue that the proposed subdivision can be adequately drained and that any additional protective measures deemed requisite to a drainage system may be fashioned and required at the time final approval of this subdivision is sought. They further assert that since the status of the drainage ditch over plaintiffs' property was the subject of another litigation and a resultant consent judgment, this action is moot.
Under the Municipal Planning Act the tentative approval of a plat or subdivision confers upon an applicant a guarantee *171 that any general terms and conditions included therein will not thereafter be modified. Specifically, "[t]his tentative approval shall confer upon the applicant the following rights for a 3-year period from the date of the tentative approval: (1) that the general terms and conditions upon which the tentative approval was granted will not be changed * * *." N.J.S.A. 40:55-1.18. Provisions for the drainage of a projected subdivision development would constitute such a general condition. N.J.S.A. 40:55-1.20 provides that "[i]n acting upon plats the planning board shall require, among other conditions in the public interest, that the tract shall be adequately drained * * *." This is reinforced by the additional statutory directive that the board "shall further require that all lots shown on the plats shall be adaptable for the intended purposes without * * * peril from flood, * * * [or] erosion * * *." Id.
The general terms and conditions envisaged by N.J.S.A. 40:55-1.18, including drainage, embrace the most basic, fundamental and significant features of a proposed subdivision  those apects of a development upon which the essential feasibility of the project is predicated. Pennyton Homes, Inc. v. Planning Bd., Stanhope, 41 N.J. 578 (1964); Levin v. Livingston Tp., 35 N.J. 500 (1961). Such basic terms and conditions including adequate drainage are therefore required to be included in a tentative approval and cannot later be altered or modified to the economic detriment of the applicant.
Proper drainage should be resolved before a tentative approval is granted in order to insure a sufficient consideration of the public interest as well as to insulate a developer from any modifications that might seriously affect the economic feasibility of the project. Planning derelictions at the local level, ill-conceived plans and insufficient facilities for drainage stemming from the fractionalization and development of lands have spawned horrendous difficulties at the community level. See Ardolino v. Florham Park Board of Adjustment, 24 N.J. 94, 108-109 (1957); Summit *172 v. Horton Corp., 70 N.J. Super. 529, 537 (Ch. Div. 1961). Cf. Hopler v. Morris Hills Regional District, 45 N.J. Super. 409 (App. Div. 1957). Local planning boards have therefore by the Municipal Planning Act been legislatively entrusted to protect and enjoined to secure what is conducive for the public good and welfare. Pennyton Homes, Inc. v. Planning Bd., Stanhope, supra; Levin v. Livingston Tp., supra. In Hilton Acres v. Klein, 35 N.J. 570 (1961), the court considered the extent to which an adequate system of sewage disposal  analogous to drainage  must be resolved as a basis for tentative approval. It noted that the Municipal Planning Act provided a procedure for local inquiry into the problems which may be engendered by a subdivision and that when an application for tentative approval is presented to the local planning board it must study and determine the adaptability of a particular subdivision for proper and effective drainage as well as sewage among other conditions. In discharging its statutory imperative, "the public interest in all its ramifications, both present and future, shall be paramount." 35 N.J. at 579. It is thus essential that the local planning board assure for the benefit of all lots within the ambit of a subdivision adequate provisions for drainage and protection from flooding or erosion. Under the Municipal Planning Act these matters are the subjects of general conditions and must be considered and resolved before tentative approval is conferred. N.J.S.A. 40:55-1.20. Pennyton Homes Inc., v. Planning Bd., Stanhope, supra; Purich v. Weininger, 72 N.J. Super. 344, 353-354 (App. Div. 1962); certif. den. 37 N.J. 221 (1962); Summit v. Horton Corp., supra.
Plaintiffs assert with justification that neither the planning board nor the governing body required defendants to demonstrate the feasibility of drainage for the proposed subdivision and that in effect the tentative approval vested in them an immutable right to proceed with the development immune from any later superimposed conditions pertaining to a general drainage system. Defendants rejoin, however, *173 by contending that under N.J.S.A. 40:55-1.21 the municipality may obligate the developer as a precondition to final approval to furnish any improvements necessary to provide sufficient drainage. N.J.S.A. 40:55-1.21 provides:
Before final approval of plats the governing body may require, in accordance with the standards adopted by ordinance, the installation, * * * of any or all of the following improvements it may deem to be necessary or appropriate: * * *, water mains, culverts, storm sewers, * * *, drainage structures, and such other subdivision improvements as the municipal governing body may find necessary in the public interest.
The requirement that the planning board consider for tentative approval the fundamental capability of a subdivision to be adequately drained is not blunted by the supplemental measures contemplated under N.J.S.A. 40:55-1.21. This section permits the governing body to demand the construction of certain improvements before final approval of a subdivision is rendered. Many of the improvements enumerated in section 21 which relate to drainage would constitute the engineering or construction details involved in the specific implementation of a drainage system and, if deemed necessary by the planning board or governing body, may be required as an incident to final approval. There may be to some extent a gray area, an overlap of considerations pertinent to a drainage system required to be resolved as a general condition for tentative approval under N.J.S.A. 40:55-1.20 and those factors subsumed in a final approval under N.J.S.A. 40:55-1.21. Any ambiguities, however, arising from the theoretical duplication between these statutory sections should be resolved by the courts in favor of the public interest. Pennyton Homes, Inc. v. Planning Bd., Stanhope, supra, 41 N.J. at 585-586. Thus, the particular improvements constituting the implementation of a drainage system may even be foreshadowed or anticipated in general plans for a drainage system. But they are not to be regarded as a substitute for or an equivalent to such overall drainage plans which must be included as a general condition *174 at the earlier and pivotal stage of tentative approval under section 20.
It is to be concluded therefrom that drainage, in all of its essential aspects as it might affect lands within the pale of a proposed subdivision, must be considered, resolved and included as a general condition in any tentative approval under the Municipal Planning Act.
In entertaining an application for tentative approval of a proposed subdivision the planning board should make specific and detailed factual findings upon which it bases its ultimate determination. See, Smith v. Morris Tp. Comm., 101 N.J. Super. 271, 282 (App. Div. 1968). It is to be noted, however, that the statute provides:
If the planning board disapproves any plat, the findings and reasons for such disapproval shall be stated upon the records of the planning board and the applicant shall be given a copy. [N.J.S.A. 40:55-1.18; emphasis added]
This imposes an affirmative duty upon the planning board in the nature of an explicit instruction to furnish upon the record its findings and reasons if it disapproves a plat. This does not by implication however obviate or negate a comparable requirement if there be an approval of a plat, especially over the specific objections of an interested party such as a neighboring property owner. Such a person would be aggrieved by the action of the planning board and would be entitled to appeal such an approval to the governing body. N.J.S.A. 40:55-1.19. Thus where the administrative proceeding before the planning board assumes an adversary cast, the deliberative process undertaken by the agency at such a hearing should be fully disclosed upon the record. Cf. Handlon v. Belleville, 4 N.J. 99 (1950); In re Borough of Peapack-Gladstone, 11 N.J. Super. 498 (App. Div. 1951); compare N.J. Ins. Underwriting Association v. Clifford, 112 N.J. Super. 195 (App. Div. 1970); N.J.S.A. 52:14B-9, 10. Without complete factual findings and expressed reasons disclosed on the record there can be no intelligent assessment *175 of the local determination upon review. See Hilton Acres v. Klein, 64 N.J. Super. 281, 300 (App. Div. 1960), mod. 35 N.J. 570 (1961).
The procedure followed by the planning board in this respect was inadequate. Neither the resolution itself nor the record of the proceedings explicate the deliberations of the board. While reference was made to a letter report of the borough engineer, this report did not deal with drainage as it might affect land situated as plaintiffs'. The engineer did not testify at the meeting concerning any plans for a drainage system or erosion and flood control. Moreover the resolution encompassing the board's tentative approval of the subdivision did not indicate to what extent drainage, erosion, or flood conditions were considered.
In adjudicating an appeal from a planning board's tentative approval of a plat the governing body must provide a hearing and state its findings and reasons. N.J.S.A. 40:55-1.19. In this case the position of plaintiffs at the municipal appeal, buttressed by the testimony of a professional engineer, was to the effect that the subdivision could not be developed as indicated in the plat without inevitable and substantial injury to their property. The inquiry at the municipal level therefore should have been whether the plat could be adequately drained without causing unreasonable or untoward erosion and flooding. Cf. Armstrong v. Francis Corp., 20 N.J. 320 (1956). In the face of testimony which forecast this result the governing body should have required the presentation of more evidence on the problems of drainage, erosion and flooding; and it should have determined in the light of all the evidence the extent to which plans for adequate drainage could be crystallized into general conditions incident to the tentative approval. The determination of the governing body as reflected in its resolution discloses that it did not properly or effectively grapple with the issue before it. Its recitals to the effect that a property owner has a legal duty to protect his own property and that there is natural drainage through an existing water course are not *176 dispositive factual determinations. Its statements that a development of the tract for residential homes and the utilization of the existing water course for drainage are reasonable uses constitute mere conclusions.
Where the record presented to a reviewing court is inadequate and the administrative agency has acted under a misapprehension regarding its function, the proper course is to remand the matter for a rehearing and redetermination. Kotlarich v. Ramsey, 51 N.J. Super. 520, 543 (App. Div. 1958). The matters here must be recycled and again brought before the planning board, the planning agency initially responsible for determining the general conditions to be included in a tentative approval. Smith v. Morris Tp. Comm., supra. On such remand, it should require the submission of evidence concerning the adequacy of drainage of the proposed subdivision and whether the potential danger of untoward flooding and erosion can be thwarted or forestalled; it should consider such plans for drainage and determine whether the tract can be sufficiently drained, and it should require such a plan as it may deem satisfactory to be included as a general condition to its tentative approval. Its judgment must be memorialized of record so that a reviewing body or court can fathom its factual and conclusory bases.
Defendants have further asserted that this litigation is moot by virtue of the entry of a consent order settling an earlier suit brought in the Chancery Division of the Superior Court. In that suit plaintiffs sought to enjoin the borough and others (not the defendants here) from building conduits and discharging surface water from another tract of land upon their property and to perform such construction as would protect their property from erosion. In that case plaintiffs moved to amend their complaint to include a cause of action against Cypress, which had contracted to purchase the Matarazzo tract for subdivision. This motion was denied. Thus potential injury from erosion which the Wind Ridge South Section II subdivision *177 might engender, the res sub judice, was not interjected in the Chancery Division suit. The consent judgment entered therein anticipates that certain improvements will be undertaken with respect to the drainage ditch as it crosses plaintiffs' property. Consequently the execution of this judgment might become germane at the hearing before the planning board on the issue of what would be requisite to an adequate drainage system to be included as a general term or condition to any tentative approval of the subdivision here under consideration. The advantages which might accrue to plaintiffs by the performance of that judgment do not however render moot the within action in lieu of prerogative writs or preclude the relief to which they are entitled.
For the foregoing reasons summary judgment shall be entered against defendants and the matter shall be remanded to the Planning Board of the Borough of North Caldwell for further proceedings consistent with this decision.