# Hart *against* Allen and Grant.

In an action against a common-carrier for a loss, it is not sufficient, to entitle the plaintiff to recover, that there was a defect about the vessel, or want of skill in the carrier ; but it must also appear that such defect or want of skill contributed, or may have contributed in some measure to occasion the loss. It is the consequences of negligence, not the abstract existence of it, for which a carrier is answerable.

ALLEGHANY county. Common pleas.

This was an action on the case by Allen and Grant against Scudder Hart and others, surviving partners of the steamboat Bolivar.

The plaintiffs gave in evidence a bill of lading, dated at Cincinnati, 18th of December 1826, of nine chests of tea shipped on board the Bolivar for the plaintiff in Pittsburgh, " to be delivered in good order, unavoidable accidents and the dangers of the river excepted, they paying freight, 50 cents per hundred pounds ; and if the owners of the boat should be compelled to re-ship them, 62 cents per hundred pounds." That the teas were delivered to the plaintiffs in a damaged state, owing to their having been wet. The damage was estimated at 323 dollars.

The defendants gave in evidence, that on account of the low stage of water it was impossible for the Bolivar to have made her voyage to Pittsburgh without great damage to the vessel and cargo ; that when she arrived at Wheeling, it was deemed prudent to re-ship the teas and the residue of the cargo on board of keel-boats, and the teas were accordingly put on board a small keel-boat called the Ploughboy,

[Hart v. Allen and Grant.]

commanded by Samuel Johnston; that this boat, when on her passage up the river, was driven by a sudden squall of wind and snow sidewise, and upset, whereby the teas were wet and damaged; that she was well fitted for the voyage; that every exertion was made to save her; and that Samuel Johnston, the captain, was a man of experience.

To rebut this, the plaintiffs gave evidence that Samuel Johnston was not an experienced boatman or pilot, and offered a deposition of David W. Miller, taken under a commission; which was objected to, because the last interrogatory had not been fully or fairly answered, and the answers to the first and second interrogatories were not legal evidence.  These objections were overruled.

These errors were assigned to the opinion of the court:

1. The court below erred in admitting the deposition of David W. Miller.

2. The court below erred in charging the jury, that although the accident in this case resulted from the act of God, and could not have been prevented by any human prudence or foresight; and although it would, in this respect, come within the exception that excuses the carrier in case of loss: still, if the crew of the boat was not sufficient, or if she was not under the control of a master or pilot sufficiently skilled to perform the duties corresponding to his station, the carrier cannot avail himself of the exception, nor excuse himself from responsibility to the owner, to the extent of the injury done to the goods. And also, in substance, that if the jury think that the boat was not fit for the voyage, or the master not competent, or the crew insufficient; they ought to find a verdict for the plaintiff, whatever might be their opinion as to the real cause of the upsetting of the boat.

*Fetterman,* for plaintiff in error, cited, Bell *v.* Reed, 4 *Binn.* 137; *Abbot on Ship.* 218, 251; 3 *Mass.* 481; *Phillips on Ins.* 249.

*Craft* and *Forward,* contra, cited, 3 *Mass.* 485; 8 *Serg. & Rawle* 557; *Parke* 220; 3 *Kent's Com.* 235; 3 *Esp. Rep.* 127; 7 *Term Rep.* 157; 1 *Conn. Rep.* 487; 19 *Common Law Rep.* 213; 1 *Marsh.* 159.

The opinion of the Court was delivered by

GIBSON, C. J.—Had the judge said no more than that the carrier is bound to provide a carriage or vessel in all respects adequate to the purpose, with a conductor or crew of competent skill or ability, and that "failing in these particulars, though the loss be occasioned by the act of God, he shall not set up a providential calamity to protect himself against what *may* have arisen from his own folly;" there would have been no room for an exception.  But the cause was eventually put to the jury on a different principle: "though the accident resulted from the act of God," it was said, "*and could not have been prevented by any human prudence or foresight,* and though it would

[Hart v. Allen and Grant.]

in this respect otherwise have come within the exception that excuses the carrier in case of loss: still, if the crew of the office were not sufficient, or if she were not under the control of a master or pilot sufficiently skilful to perform the duties correspondent to his station, the carrier cannot avail himself of the exception." By this the jury were instructed, in accordance, as it was supposed, with the principle of Bell *v.* Reed and Beelor, 4 *Binn.* 127, that want of seaworthiness has the peculiar effect of casting every loss, from whatever cause, on the carrier, as a penalty, I presume, for his original delinquency, and not for its actual or supposed instrumentality in contributing to the disaster, which is admitted to have been produced, in this instance, by causes unconnected with the master or crew, and to have been of a nature which no human force or sagacity could control.

Does such a penalty necessarily result from the nature of the contract? A carrier is answerable for the consequences of negligence, not the abstract existence of it. Where the goods have arrived safe, no action lies against him for an intervening but inconsequential act of carelessness: nor can it be set up as a defence against payment of the freight; and for this plain reason, that the risk from it was all his own. Why, then, should it, in any other case, subject him to a loss which it did not contribute to produce, or give an advantage to one who was not prejudiced by it? It would require much to reconcile to any principle of policy or justice, a measure of responsibility which would cast the burthen of the loss on a carrier whose wagon had been snatched away by a whirlwind in crossing a bridge, merely because it had not been furnished with a proper cover or tilt to protect the goods from the weather. Yet the omission to provide such a cover would be gross negligence, but, like that imputed to the carrier in the case before us, such as could have had no imaginable effect on the event. A carrier is an insurer against all losses without regard to degrees of negligence in the production of them, except such as have been caused by an act of providence, or the common enemy: and why is he so? Undoubtedly to subserve the purposes, not of justice in the particular instance, but of policy and convenience: of policy, by removing from him all temptation to confederate with robbers or thieves—and of convenience, by relieving the owner of the goods from the necessity of proving actual negligence, which, the fact being peculiarly within the knowledge of the carrier or his servants, could seldom be done. *Jones on Bail.* 108, 109; 2 *Kent* 59, 78. Such are the rule and the reason of it, and such is the exception. But we should enlarge the rule, or to speak more properly, narrow the exception far beyond the exigences of policy or convenience, did we hold him an insurer against even the acts of providence, as a punishment for an abstract delinquency, where there was no room for the existence of a confederacy, or the operation of actual negligence; and to carry a responsibility, founded in no principle of natural equity beyond the requirements of necessity, would be gratuitous injustice. A delinquency which might

[Hart v. Allen and Grant.]

have contributed to the disaster, such, for instance, as is imputable to the owner of a ship driven on a lee shore, for a defect in the rigging or sails, would undoubtedly be attended with different consequences; for as it would be impossible to ascertain the exact effect of the delinquency on the event, the loss would have to be borne by the delinquent on a very common principle, by which any one whose carelessness has increased the danger of injury from a sudden commotion of the elements, is chargeable with all the mischief that may ensue : as in Turberville *v.* Stamp, *Skin.* 681, where it was adjudged, that the negligent keeping of fire in a close would subject the party to all the consequences, though proximately produced by a sudden storm ; and the same principle was held by this court in The Lehigh Bridge Company *v.* The Lehigh Navigation, 4 *Rawle* 9.   But it would be too much to require of the carrier to make good a loss from shipwreck, for having omitted to provide the ship with proper papers, which are a constituent part of seaworthiness, and the omission of them an undoubted negligence.

But it has been supposed that there is a difference, depending on the peculiar nature of affreightment, between the liability of a carrier by water and that of a carrier by land ; and that being an insurer, there is necessarily in the contract of the former, as in every contract of marine insurance, an implied warranty or condition of seaworthiness.   If that be the foundation of the doctrine, it falls to the ground in every case like the present : for it is not to be admitted that the law of maritime contracts can be applied to freshwater transactions ; or that calling the receipt of a carrier on the Ohio a bill of lading, or the misapplication of other terms appropriate only to maritime commerce, can change the essential character of the things designated by them.   Steamboats on the Ohio, and ships in the foreign or coasting trade, are subject to different laws, both municipal and international, as regards registry, ownership, documents, hypothecation, insurance, freight, wages, authority of the master, and a variety of other matters; as well as the rights and remedies to which they give rise, and the courts which have recognisance of them. How far principles of maritime law may be applicable to the navigation of the great American lakes, which are, in fact, inland seas, and have been the field of naval achievement and glory, it is unnecessary to say ; but the hiring of a boat for purposes of transportation on one of our freshwater rivers, I take to be attended with no peculiar incident of a charter party of affreightment, the contract being regulated exclusively by the common law.   But these incidents are immaterial as to their supposed effect on the present question, because the same rule in respect to the vehicle is undoubtedly applicable to every sort of carriage, the owner of a ship being liable as a common carrier, on strict common law principles, for damage *occasioned* by any defect of seaworthiness, 3 *Kent* 204—206, just as a carrier by land is liable for damage occasioned by any defect in his wagon.   The assertion that the carrier is bound to provide a sufficient vessel, or

[Hart v. Allen and Grant.]

bear the consequences of the default, is nothing more than an appli-
cation of the general principle of his responsibility to a specific case;
and not the designation of a superadded duty, as might be supposed
from the particularity with which it is repeated by elementary writers
on the subject of freight; and hence perhaps the origin of the impres-
sion that there is one rule for the water, and another for the land.
Independent of actual negligence in this or any other particular, the
carrier is liable for every loss which happens from any other cause
than an act of providence or the public enemy; and to make due
provision for the transportation of the goods is asserted to be his con-
cern, because, by the general principle of his responsibility, he is to
bear the consequences if he omit it. That is what I understand to
be intended by the assertion that he is bound to provide a sufficient
vessel. But the analogy attempted to be drawn from the contract
of insurance is still more imperfect in another respect. In that con-
tract, it is the assured who enters into the warranty, which is con-
sequently introduced for the protection of the insurer; but there is
not the same reason to make it a fundamental and specific condition
of the contract, where the owner of the goods is fully protected by
the general liability of the carrier for the actual consequences of any
delinquency. I confess that I am unable to comprehend the rele-
vancy, or feel the force of Mr Justice Brackenridge's remarks in
Bell *v.* Reed and Beelor, that "where the owner insures his ship, he
remains his own carrier; and the undertaking of the *third* person is,
that the ship shall perform the voyage safely. But it is implied in
the undertaking, that the owner, the carrier, shall provide a sufficient
vessel; and where the insurance is on goods, it is implied that they
shall be taken on board of a sufficient vessel." By this elaboration
of the contract, he evidently failed to put the owner and carrier as
the same person sustaining different characters, in the place of the
insurer designated as a third person; which was the most material
matter of all to complete the parallel. Let it be conceded that in
the case of a common insurance, the insured is, in point of law, what
he may be in point of fact, the carrier of his own goods; and that
his warranty of seaworthiness is made with the insurer, a distinct
person. But where, as in the case before us, the carrier is himself
the insurer, with whom is his warranty supposed to be made? Ac-
cording to the hypothesis of Judge Brackenridge, it is made with
himself. If the office of the warranty is, as I think it must in all
cases be admitted to be, to protect the insurer from the deceit of the
owner of the goods, it is not easy to see how the latter can found a
right on the breach of it. But even in the case of an ordinary policy,
where seaworthiness is an admitted condition of the contract, its
exact performance is not, it seems, indispensable in all cases; as was
held in Weir *v.* Aberdeen, 2 *Barn. & Ald.* 320, where unworthiness
at the commencement of the risk was held insufficient to bar a reco-
very for a loss which happened after the defect had been removed;
and this on the evident ground that the insured should not have

[Hart v. Allen and Grant.]

advantage from the accidental existence of negligence without having been prejudiced by it. On the same principle, it was determined in Annen *v.* Woodman, 3 *Taunt.* 299, that a breach of the warranty has not a retrospective operation so as to avoid the liability of the insurer for a previous loss.

Standing thus on the principles of the contract, it remains to be seen how the question stands on authority. The only thing in the books like a judicial decision of the point against the carrier, is the already quoted *nisi prius* opinion of Mr Justice Brackenridge, which is supposed to have been affirmed by this court in bank, and which, therefore, merits a particular examination. It had relation to a case of stranding by storm, in which the point of defence was, that the loss had been occasioned by the act of God; to rebut which, evidence was given of want of seaworthiness by reason of certain defects in the cable and hull. The matter was put to the jury as a question of fact, and found for the carrier; and the owner of the goods appealed from an adverse determination of his motion for a new trial. The judge certainly did charge that it lies at the bottom of the contract, as a condition on which the custody of the goods is charged, that the vehicle be a good one; and that if it be not, the carrier cannot, to excuse himself, from a subsequent loss, allege that it was inevitable. That he cannot urge the act of God as an excuse, when he himself had not used the human means and precautions which he had undertaken and was bound to use; and that even a stroke of lightning, or a squall in the harbour's mouth, ought not to be alleged by one who has fraudulently taken goods into an unfit vessel. That he called it fraud to do so; and that it is the faithful carrier only who can be excused on the ground of an act of providence. That in the case of an accident from winds or waves, it is impossible to say, but the unworthiness of the vessel may have contributed to render the loss inevitable; and that unworthiness being established, the legal presumption is, that it was the cause of the accident. This is the substance of the charge; and it is evident from it, that in fixing the carrier with consequences to which his negligence may have in nowise contributed, the judge considered the law as dealing with him for a fraud. In the remarks subjoined to his report of the trial, he avows that his opinion is not founded on the authority of adjudged cases, but on analogies drawn from the contract of insurance, though it be notorious that a breach of the warranty of seaworthiness is not not visited on the assured as a penalty, but operates to avoid the policy by the failure to perform it as a precedent condition. Our present business, however, is not with the reasons of the judge, but to ascertain exactly how far his position was established by the judges in bank. In delivering the opinion of the court, the Chief Justice remarked that there was no complaint of error of law; and that the law had been laid down fairly, the fact of seaworthiness having been left to the jury. The generality of this remark is to be qualified by the subject matter of which it was predicated. Un-

[Hart v. Allen and Grant.]

doubtedly there was no room for complaint in respect of the law, nor could there be, by the owner of the goods, who, as the appellant from a verdict against him, was alone competent to complain; for the law was certainly laid down fairly, to say the least, as to him. Beside, all the remarks of the judge which were strictly relevant to the case before him, in which the species of the alleged unworthiness, especially the defectiveness of the cable, would have had an immediate and powerful effect in leading to the catastrophe, seem to have been warranted by the evidence. Now it was these remarks with which, on the motion for a new trial, the court in bank had to do; and it would have been a departure from the known habit of the Chief Justice, and perhaps even from the dictates of propriety, to have made the real or supposed errors of the judge in an abstract principle, the subject of critical remark. But that the Chief Justice admitted the solidity of the abstract principle, is made more than doubtful by his own compendious statement of the principle which he deemed applicable to the case. "The man," said he, "who undertakes to transport goods by water for hire, is bound to provide a vessel sufficient in all respects for the voyage, well manned and furnished with sails, anchors and all necessary furniture. If a loss happens *through defect in any of these respects,* the carrier must make it good." What he would have said of a loss admitted to have happened *not* through defect in any of these respects, it is easy to conjecture from the guardedness of his expression; and I therefore take the adjudication of the court in bank to be an authority against the principle to which it has been cited; so that the judgment below, in the case before us, rests on the opinion of Mr Justice Brackenridge alone, not only unsupported, but contradicted in an important particular by the other judges. If, as I have said, want of seaworthiness were a fraud, it would vitiate the contract entirely; yet such a notion as the avoidance of the contract for this cause, has, I believe, never been entertained. That the law would presume that the loss arose from unworthiness admitted or established, is a more reasonable position; but would the presumption, as the judge seemed to think, be conclusive? I am at a loss to conjecture why it should. The notion seems to rest on the same foundation as the avoidance of the contract for fraud, and is evidently untenable in a case where the reverse of the presumption is admitted, or, what is the same thing, is a postulate of the argument. The only other authority which seems to bear at all on the point, is the case of Amies *v.* Stevens, 1 *Stra.* 128, cited by Justice Brackenridge, but more consonant, it seems to me, to the opinion of Chief Justice Tilghman. The hoy of a carrier with goods on board was sunk, coming through a bridge, by a sudden gust of wind. The owner of the goods, insisting that the carrier was chargeable with negligence in going through at such a time, offered evidence to show that if the hoy had been in good order, it would not have sunk with the stroke it received; and thence inferred the carrier liable for all accidents that might have

[Hart v. Allen and Grant.]

been prevented by putting the goods into another hoy.   But Chief Justice Pratt held the carrier not liable, the damage having been occasioned by the act of God.   For though the carrier ought not to have ventured to shoot the bridge if the bent of the weather had been tempestuous; yet this being only a sudden gust of wind, had entirely differed the case.   And no carrier, he said, is obliged to have a new carriage for every journey, it being sufficient if he provides one which, without any extraordinary accident, such as this was, will probably perform the journey.   From this, it seems to have been the opinion of the Chief Justice, that to render a carrier liable for an act of providence, it is necessary that his own carelessness should have co-operated with it to precipitate the event.   But the case is of greater value in ascertaining the requisite degree of ability and skill in the captain and crew; which, according to the principle just stated, is not to be measured by the exigences of a crisis, but by its sufficiency to conduct the vessel safely to the place of destination in the absence of extraordinary accident.   Nor is the carrier bound to provide a captain who has already made a voyage as such, if he has acquired a competent share of skill in any other station.   The first question, therefore, will be, whether the captain and crew of the boat had the degree of ability and skill thus indicated; and if it be found that they had not, then the second question will be, whether the want of it contributed in any degree to the actual disaster: but if either of these be found for the carrier, it will be decision of the cause.   It seems, therefore, that, though the exceptions to the admission of the deposition are unfounded, the cause ought to be put, on these principles, to another jury.

Judgment reversed, and a *venire de novo* awarded.