TRAVERSE H. READ and others v. MORRELL B. SPAULDING.

When a carrier is entrusted with goods for transportation, and they are injured or lost on the transit, the law holds him responsible for the injury. He is only exempted by showing that the injury was caused by an act of God or the public enemy. And to avail himself of such exemption, he must show that he was himself free from fault at the time.

His act or neglect must not concur and contribute to the injury. If he departs from the line of his duty and violates his contract, and while thus in fault, and in consequence of that fault, the goods are injured by the act of God, which would not otherwise have caused the injury, he is not protected.

Thus, where there was an unreasonable delay on the part of a carrier. in forwarding goods, and while they were in a railroad depot, at an intermediate point, they were wetted and injured by an extraordinary flood, caused by the damming up of the water in the channel by ice and setting the same back upon the freight depot; *Held*, that the goods having been exposed to the peril by the fault and neglect of the carrier, he was not excused

*Appeal from a judgment of the Superior Court of the city of New York.*

THE action was brought against the defendant as proprietor of, or person doing business, under the name and style of "Spaulding's Express Freight Line," to recover for the injury and damages done to five cases of goods which he agreed to transport or forward from the city of New York to Louisville, in the state of Kentucky. They formed part of eighty-four cases of straw goods which were delivered to the defendant in the city of New York on the 27th day of January, 1857. The answer alleged that the defendant was a forwarder only, and not a common carrier; it denied any negligence or unreasonable delay, and averred that whatever injury the goods sustained was caused by an extraordinary flood; and that all that human foresight and skill could do was done to avoid damage and guard against said flood. The average time occupied in the carriage of goods from New York to Louisville was about fifteen days, and it appeared that seventy-nine of the cases so received ·

arrived at Louisville in twelve or fourteen days from the time of their delivery to the defendant in New York. It also appeared that the five damaged cases reached Albany on Saturday, the 7th of February, 1857, and were stored in a warehouse of the N. Y. Central Railroad Company, and were damaged on the night of the 8th and morning of the 9th, by water, occasioned by an unprecedented flood in the Hudson River, to the amount of $681.83. It was admitted that Albany by the route of the Harlem Railroad was 160 miles from New York, and freight cars were running on that road from New York to Albany daily. The defendant moved for a non-suit, on the trial, on the ground (among others) that the damage to the goods was caused by the act of God, and that the defendant was not therefore liable. The judge refused to non-suit, and directed a verdict for the plaintiffs for $681.83, the full amount of the damage done to the goods, including interest. . The defendant excepted to the rulings of the judge, and the exceptions were directed to be heard, in the first instance, at the general term. Judgment was ordered in favor of the plaintiffs, by the general term, upon the verdict, with costs, upon the ground of " unreasonable and unexcused delay in the transportation, *and actual injury resulting therefrom."* (See 5 Bosw. 395 S. C.) The defendant thereupon appealed to this court.

*S. T. Fairchild*, for the appellant.

I. If the delay between New York and Albany was inexcusable, the defendant would be liable for such damages as are naturally and directly attributable to the delay, and for no other—as interest on value—additional premium on insurance, if paid—and, it may be, deterioration in value or price, caused by delay. (Angell on Carriers, p. 490; *Black* v. *Baxendale*, 1 W. H. & G. 410.)

II. If the delay was "unavoidable," the defendant would not be liable for any damages caused by the delay,.

because, by the express terms of the contract, the plaintiffs "assumed the risk of damage from unavoidable delays."

III. It would have been useless and irrelevant for the defendant to give evidence of the facts which would have shown the delay to have been unavoidable, because the damages for which the action was brought and for which the verdict and judgment have been rendered were not caused by the delay, but by the flood. Judge WOODRUFF, in giving his opinion in the case, admits that the flood caused the actual injury, and that the delay did not cause the flood, but because no excuse was shown for the delay, he holds that the defendant, therefore, forever afterwards lost all protection from liability for damages, though caused by the act of God. He admits that the only case which he cites bearing upon the question, (*Morrison* v. *Davis*, 20 Penn. Rep. 171,) is against the doctrine which he lays down, and he cites, to sustain his doctrine, seven cases which have no relevancy to the question, viz: 6 Bing. 716; 12 Conn. 410; 4 Whart. 204; 3 Sand. 610; 1 Conn. 492; Harp. S. C. 262, 468. The first four of these seven cases were cases where the damages occurred at a time when the carrier had deviated from the voyage on which he had agreed to carry, and for which the owner of the property had effected insurance. Deviation is not only a voluntary act but it involves a change of risk and peril in the voyage which is manifest before it is entered upon. Not so with delay. The carrier, by an unnecessary deviation, assumes the risk not only of any damages that may happen consequent upon, but also of all subsequent to deviation, so long as it continues. The law making a carrier responsible for loss arising subsequent to deviation seems to be founded upon good policy, for by the law of insurance an insurer is released from liability by such deviation, and if the carrier be not held, the owner has no way to protect himself against his loss but by taking out another insurance against deviation, and thus incurring

additional expense for which he can have no recovery.
Aside from the question of insurance, the owner might not
be willing to subject his goods to the peril of a voyage
different from the one he intended them to take, and it
might well be that he would select a different vessel for
such a voyage, as the court suggested in 6 Wheat. 204.
There would seem to be reasons ample for setting aside
the maxim *Causa proxima non remota spectatur*, in the case
of deviation—or rather the maxim does not apply, for it is
a question whether the carrier has put himself in the posi-
tion of the owner as to any accident, and the law holds
that he has, having voluntarialy assumed some of the func-
tions of the owner over the goods, against the consequences
of which the owner has no protection if he cannot look to
the carrier.

The other three cases were cases where the damages were
caused by negligence, want of ordinary care in the carriers,
and they were held liable for that reason.    Such cases do
not apply in this case, as it was admitted that "there was
no negligence or omission of duty on the part of the defend-
ant in not anticipating the occurrence of the flood; and
from the time it was apparent there would be a rise of
water the goods could not have been prevented from
being wet as they were."   No more do the cases based
upon deviation apply to this case, for the law of devia-
tion rests upon reasons peculiar to itself — and unless
there be some positive law by which the carrier is held
liable for all loss subsequent to delay, or some public
policy, by which he ought to be held for such loss, then he
is released from liability for all damage, except such as is
the natural consequence of his delay,·namely interest on
the value of the goods—perhaps deterioration in price, and
if the owner be insured, the additional premium he must
pay.

IV. The proximate cause of the damage in this case was
the unprecedented flood, and the defendant is therefore
exempt from liability under the maxim, *In jure non remota*

*causa, sed proxima spectatur.*   It were infinite for the law
to judge the causes of causes, and their impulsions one of
another; therefore it contenteth itself with the immediate
cause; and judgeth of acts by that, without looking to any
further degree.   The policy of the law makes the common
carrier responsible for everything but acts of God and the
public enemies.   "For else these carriers might have an
opportunity of undoing all persons that had any dealings
with them by combining with thieves, &c., and yet in doing
it in such a clandestine manner as would not be possible to
be discovered.   And this is the reason the law is founded
upon in that point."   (Lord Holt, 2 Raym., 909.)   Story
(on Bailments, § 490,) says:   "He is treated as an insurer
as to all but the excepted perils, upon that distrust which
an ancient writer has called the sinew of wisdom."   In § 491
he quotes, Ch. J. BEST, "to give due security to property
the law has added to that responsibility of a carrier which
immediately arises out of his contract to carry for a reward,
namely, that of taking all reasonable care of it, the respon-
sibility of an insurer.   From his liability as an insurer, the
carrier is only to be relieved by two things, both so well
known to all the country, when they happen, that no per-
son would be so rash as to attempt to prove that they had
happened when they had not, namely the act of God and
the King's enemies."   In § 492, he says, "In questions
therefore as to the liability of a carrier the point ordinarily
is not so much whether he has been guilty of negligence or
not as whether the loss comes within either of the excepted
cases."   He says also, that a carrier may by his negligence
be liable for even such a loss, as if a bargeman should
rashly shoot a bridge in tempestuous weather.   Against
the excepted perils the carrier must use ordinary care.
STORY, J., in *Waters* v. *Louisville Insurance Co.* (11 Pet.
223), says: "It is a well-established principle of the com-
mon law that in all cases of loss, we are to attribute it to
the proximate cause, and not to any remote cause.   *Causa,
proxima non remota spectatur,* and this has become a maxim

not only to govern other cases but to govern cases arising under policies of insurance." How can it be said with any propriety that the defendant was negligent in not avoiding the flood, or that he colluded with the Harlem Railroad Company for delay in transporting the goods so that they should reach Albany just in time for the flood? The only cases directly in point, that I can find, are *Morrison* v. *Davis* (20 Penn. 171); *Denny* v. *N. Y. Central R. R. Co.* (13 Gray, 481.) In both these cases this doctrine is maintained. "But the ordinary consequence of the fault charged in this case is the loss of time, and the penalty is measured accordingly, even though a concurrence of other extraordinary circumstances has greatly increased the extent of the loss. The law does not make the delay an element in testing the inevitableness of the final disaster." (20 Penn. 171.) In this case the plaintiffs could have protected themselves against loss by continuing their insurance, and have had proper remedy against the carrier for the additional expense. No one can say it might well be the plaintiffs would have chosen a different means of conveyance for their goods after the delay of ten or eleven days, when every thing connected with the means of transportation was in the same apparent condition as when the goods were delivered to the defendant. Neither ordinary nor extraordinary care could have foreseen such a flood as occurred when "the water rose suddenly some four feet higher than it had ever risen before." The judge, in 4 Whart. 204, said there was one of two proper courses for the master to pursue: "To remain in safety at the mouth of the canal, or in some convenient and safe place in the neighborhood, until the obstructions were removed; or he should have returned and informed the owners and shippers of the impracticability of proceeding through the canal." But if delay devolves upon the carrier the same responsibility as deviation, then in that case there was but one proper course for the master: to return to the owners for instructions. If the owner, after every such loss, were allowed to seek

whether the carrier had been guilty of neglect or delay in any previous part of the journey, "it would induce an infinite number of questions as to the quantum of care which, if used, might have prevented the loss." (5 B. & Ald. 174.) The following authorities show what is meant by act of God: Story on Bailments, § 511; Angell on Carriers, § 154; *Coggs* v. *Bernard* (1 Raym. 909); *Forward* v. *Pittard* (1 T. R. 33).

*Causa proxima* is illustrated by the following authorities: Story on Bailments, § 515; *Rusk* v. *Royal Ex. Ass. Co.* (2 B. & Ald. 72); *Green* v. *Elmslee* (Peake's N. P. C. 212); *Livrie* v. *Jansen* (12 East, 647); *Walker* v. *Maitland* (5 B. & Ald. 174); *Patapsco Ins. Co.* (3 Peters, 222); *Columbia Ins, Co.* (10 Peters, 507); *Waters* v. *Merchants' Ins. Co.* (11 Peters); *Rice* v. *Homer* (12 Mass. 230); *Williams* v. *Suffolk Ins. Co.* (3 Sumner, 270); *Saddler* v. *Dixon* (8 M. & W. 895); *Redman* v. *Wilson* (14 M. & W. 476); *Marble* v. *Worcester* (4 Gray, 395).

No law commands, no public policy requires, that the common carrier, a necessary and invaluable public servant, should be held liable for a loss occurring under the circumstances which caused the damage for which the judgment in this case was rendered.

*G. M. Speir,* for the respondents.

I. The defendant was a common carrier and liable as such under the bill of lading or contract, and not a mere forwarder, whose duty consisted only in receiving and delivering the goods to others to be carried. (*Blossom* v. *Griffin,* 3 Kern. 569; *Mercantile Ins. Co.* v. *Chase,* 1 E. D. Smith 115; *Fairchild* v. *Slocum,* 19 Wen. 329; *Wilcox* v. *Parmelee,* 3 Sand. S. C. R. 610.

1. The term to be forwarded by Spaulding's Express to the place named in the bill of lading, to wit: "to R. A. & Co., Louisville, Ky., via Indianapolis," is controlled by the nature and extent of the undertaking. The defendant

was bound to deliver the goods at Louisville whether the term used was " carry" or "forward." Besides, the compensation received of $1.78 per 100 lbs., was the price for the whole service. (*Muschamp* v. *Lancaster Rail R. Co.*, 8 Mees. & Wels., 421.)

2. The fact proved, "that the defendant had no interest in or control over any of the routes or railroads mentioned in the said bill of lading over which the said goods were transported," does not relieve him from his responsibility. He undertook to deliver the goods, and it thereby became his duty to provide the means.

3. The bill of lading does not specify any routes or railroads. It simply states that the goods should be carried via Indianapolis.

4. The provision that, in case of loss from any cause from which Spaulding's Express should be liable, they shall have the benefit of any insurance thereon, and in case of loss on the lakes, the freight and charges to or at Buffalo should be paid by the owner is wholly inconsistent with the claim that his duty was performed, and his liability terminated by a mere delivery of the goods to other persons to be carried.

II. The injury to the goods resulted from the unreasonable and inexcusable delay in their transportation, through the negligence and fault of the defendant.

1. The defendant received all the goods at the same time, to wit, on the 27th of January, 1857, in New York, and all the cases, excepting five, which were damaged, reached their place of destination in twelve or fourteen days after they were received in New York, that is to say, they reached Louisville on the 8th or 10th of February.

2. The five damaged cases reached Albany on the 7th of February, when they ought to have been with the undamaged goods at Louisville. The proof is that the average usual time of conveyance from New York to Louisville is from ten to fifteen days, and there is nothing in the case to show that the undamaged goods were carried

through by any unusual speed. It is plain, therefore, that if the defendant had performed his duty these five cases would have reached Louisville at the same time with the others.

3. The distance between Albany and New York by the Harlem Railroad is 160 miles, and freight cars were running on that road daily; and there is no explanation offered by the defendant for this gross negligence in the performance of his duty.

III. The defendant, as common carrier, must be without fault himself, in order to claim exemption from liability for damage done to goods in his hands in course of transportation, though injured by what is deemed the act of God. He omitted to perform his plain duty, and violated his contract to carry, by an unreasonable detention. The delay did not cause the flood, but did expose the goods to the peril. From the moment his faulty negligence began, he became an insurer against the consequences therefrom, both ordinary and extraordinary. (*Davis* v. *Garrett*, 6 Bing. 716; *Bell* v. *Reed*, 4 Binney, 127; *Hart* v. *Allen*, 2 Watts, 114; *Williams* v. *Grant*, 1 Conn. R. 492; *Crosby* v. *Fitch*, 12 Conn. R. 410.)

IV. The clause in the contract that "no risk should be taken over two hundred dollars on any single package," has reference to perils which occur without the actual fault of the defendant, and does not exempt him from liability from losses resulting from his actual negligence. (*Cole* v. *Goodwin*, 19 Wend. 251; *Gould* v. *Hill*, 2 Hill, 623; *Hollister* v. *Nowlen*, 19 Wend. 234.)

1. The intention of inserting the clause was to guard against liability upon small packages of goods of great value, and to diminish the risk of insurance without a corresponding compensation for transportion.

2. The seventeen packages were enclosed in a rough open box, through which they could be seen. The defendant received one dollar and seventy-eight cents for every one hundred pounds. He received pay, therefore, for

seventeen packages instead of one, and the defendant knew he was receiving seventeen packages.

DAVIES, J.   It is conceded that there was unreasonable delay on the part of the defendant in the carriage of the goods from the city of New York to the city of Albany. The eighty-four cases were delivered together on the 27th of January, and it was the duty of the defendant to transport or forward the same without unnecessary delay.   If they had all been forwarded together, the whole would have reached Louisville about the time that those five cases reached the city of Albany.   Then it is also conceded that the goods were injured by an act of God, which ordinarily would excuse the carrier.   The law, upon well known motives of policy, has determined that a carrier shall be responsible for the loss or injury to property entrusted to him for transportation, though no actual negligence exist, unless it, the loss or injury, happen in consequence of the act of God, or the public enemy.   (*Wibert* v. *The New York & Erie Railroad Company*, 2 Kernan, 245.) The defendant seeks to avail himself of this well recognized rule of law to relieve himself from liability in the present action; and there would be no question that it would be adequate for such purpose if the defendant had been free from fault himself, and if his negligence had not contributed to the injury complained of.   It is a well settled rule that, when the law creates a duty or charge, and the party is disabled from performing it, without any default in himself, and has no remedy over, the law will excuse him.   (*Harmony* v. *Bingham*, 2 Kern. 99.)   It is to be observed that the foundation of this exemption is, that the party claiming the benefit and application of it must be without fault on his part.   If these goods, therefore, had been forwarded from New York to Albany with reasonable diligence, and the injury had happened to them, as it did, by an act of God, then the defendant would have been excused and exempted from liability for the damages to

the goods so entrusted to him. This principle or distinction is fully recognized by abundant authority, and is founded alike upon sound sense and good morals. In *Davis* v. *Garrett* (6 Bing. 716), the plaintiff put on board the defendant's barge, lime, to be conveyed from the Medway to London. The master of the barge deviated unnecessarily from the usual course, and, during the deviation, a tempest wetted the lime, and, the barge taking fire thereby, the whole was lost. The defendant claimed that, the lime having been destroyed by the act of God, he was exempt from all liability for its loss. But the court thought otherwise; and TINDAL, C. J., in delivering the opinion, observed that no wrong-doer can be allowed to apportion or qualify his own wrong; and that, as a loss had actually happened whilst his wrongful act was in operation and force, and which was attributable to his wrongful act, he could not set up, as an answer to the action, the bare possibility of a loss if his wrongful act had never been done. It might admit of a different construction if he could show not only that the same loss *might* have happened, but that it *must* have happened if the act complained of had not been done. There is no evidence of this character in the present case, nor any suggestion that the injury in the present instance would have occurred if the goods had been sent forward without any unreasonable delay. It is apparent that if they had been they would not have been injured in the particular manner they were. If the five cases injured had gone on with the other seventy-nine cases, and no reason is suggested why they could not, it is reasonable to assume they would have reached their ultimate destination without injury.

In the case of *Buson* v. *The Charleston Steamboat Co.* (1 Harp. 262), where goods were laden on board a steamboat which grounded from the reflux of the tide, in consequence of which she fell over, and the bilge water rose into the cabin and injured a box of books belonging to the plaintiff, the defendants were held liable for the loss. The court

regarded the defendants as guilty of negligence, in not selecting a proper place for the grounding of the vessel, and in not removing the books when the water came into the cabin, and said that the injury was not an unavoidable consequence of the grounding, but the consequence of negligence in grounding. So also, in *Campbell* v. *Muse,* (1 Harp. 468.) The wagon of the defendant, in which he was carrying goods for hire, stuck fast in fording a creek, and the water rising suddenly damaged the goods, it was held that the defendant was liable for the damages so occasioned. The court say, that it is manifest that if the defendant had gone through the creek, without stopping, no injury would have resulted; his halting there, and not the rise in the creek was the cause of injury, and if such circumstance were to operate as a relief from liability, the carriers of this description would be always exempted. In *Bell* v. *Reed,* (4 Binney, 127,) the supreme court of Penn. held that a carrier's vessel must be seaworthy, or he must answer for the loss or injury to goods carried in her, although the loss does not proceed from the unseaworthiness. *Hart* v. *Allen* (2 Watts, 114), contains a very critical review of the case in 4 Binney, and GIBSON, Ch. J., says, that it was held in that case, that to render a carrier liable for an act of Providence, it is necessary that his own carelessness should have co-operated with it to precipitate the event. And in this latter case, it was held that the first inquiry was, to test the liability of the carrier whether the captain and crew of the vessel carrying the goods had competent skill and ability to navigate the vessel; and if they had not, whether the want of it contributed in any degree to the actual disaster. In *Hand* v. *Boynes* (4 Whar. 204), the carrier was held liable for loss of goods, caused by an act of God, on the ground that he had deviated from the direct and usual route, and was therefore in fault at the time the injury happened.

In *Williams* v. *Grant,* (1 Conn. Rep. 487), SWIFT Ch. J. thus clearly defines the rule of law applicable to a case of

41

this kind. He says: "Under the term *act of God* are comprehended all misfortunes and accidents arising from inevitable necessity which human prudence could not foresee or prevent; and in cases of this description, carriers may be liable for a loss arising from an inevitable necessity existing at the time of the loss, if they had been guilty of a previous negligence or misconduct by which the loss may have been occasioned." GOULD, J., said: "It is a condition precedent to the exoneration of the carriers, that they should have been in no default, or in other words, that the goods of the bailee should not have been exposed to the peril or accident which occasioned the loss, by their own misconduct, neglect or ignorance. For though the immediate or proximate cause of a loss, in any given instance, may have been what is termed the *act of God*, or inevitable accident, yet if the carrier unnecessarily exposes the property to such accident, by any culpable act or omission of his own, he is not excused." *Crosby* v. *Fitch* (12 Conn. 410), holds the same doctrine. These cases therefore clearly establish the rule that the carrier cannot avail himself of the exception to his liability which the law has created, unless he has been free from negligence or fault himself. The policy of the law is to hold carriers to a strict liability; and this policy for wise and just purposes ought not to be departed from. But when the injury occurs from a cause which the carrier could not guard against nor protect himself from, in such an event the law excuses him, but it only does it when he himself is not in fault and is free from all negligence.

There are two cases which seem to maintain a contrary doctrine and which will now be adverted to. One is that of *Morrison* v. *Davis* (20 Penn. R. 171). In that case goods were carried in a canal boat on the Pennsylvania canal, and were injured by the wrecking of the boat caused by an extraordinary flood, and it was held that the carriers were not rendered liable merely by the fact that when the boat was started on its voyage one of the horses attached to it was lame, and that in consequence thereof such delay

occurred as prevented the boat from passing the place where the accident happened, beyond which place it would have been safe, and the general proposition was decided that carriers are answerable for the ordinary and proximate consequences of their negligence, and not for those which are remote and extraordinary. The court in its opinion assumed that the immediate cause had the character of an inevitable accident, but that this cause could not have affected the boat had it not been for the remote fault of starting with a lame horse. And the general rule was declared to be that a man is answerable for the consequences of a fault only so far as the same are natural and proximate, and as may on this account be foreseen by ordinary forecast, and not for those which arise from a conjunction of the faults with other circumstances that are of an extraordinary nature, and it was held that the true measure of liability was indicated by the maxim, *causa proxima, non remota spectatur*.

The other case is that of *Denny* v. *New York Central Railroad Company* (13 Gray, 481), where it was held that the proprietors of a railroad, who negligently delayed the transportation of goods delivered to them as common carriers, and then to transport them safely to their destination, are not responsible for injuries to the goods by a flood while in their depot at that place, although the goods would not have been exposed to such injury but for the delay. The jury found specially that the defendants were wanting in that degree of care and diligence which the law required of them in seasonably transporting the plaintiff's wool from the Suspension Bridge to Albany, and that the wool was injured by reason of the want of such care and diligence, and that the defendants were wanting in that degree of care which the law required of them in attempting to save the plaintiff's wool from the injury which it received at the place where it was deposited by them on its arrival at Albany. In the opinion of the court the case was considered only upon the first finding, the verdict of

the jury upon the second having been set aside as against the weight of evidence. And the court held the jury only to affirm that the defendants failed to exercise due care and diligence in the prompt and seasonable transportation of the wool, and that by reason of this failure, and the consequent detention of the wool at Syracuse, it was injured by the rise of the water in the Hudson, and thereby sustained damages to which it would not have been exposed if it had arrived at Albany as soon as it should have done, because in that event it would have been taken away from the defendants' freight depot and carried forward to Boston before the occurrence of the flood. The decision was put in the case upon the ground that the defendants were responsible only for the proximate and not for the remote consequences of their actions. And the court, arriving at the conclusion that the defendants were not liable, placed much stress upon the fact that the duty of the defendants, as carriers, had terminated at the time the injury happened. They had made the delivery required of them, and they were sought to be charged because they had not made it earlier. At the time of the flood, therefore, they were not in charge of the wool as common carriers. All their duties and responsibilities as such had ceased, except that they were liable for such damages as the owners had sustained by reason of their delay in the delivery of it. The court say that the rise in the waters of the Hudson, which did the mischief to the wool, occurred at a period subsequent to this, that is, the termination of their duty as carriers, and consequently was the direct and proximate cause to which that mischief is to be attributed. The negligence of the defendants was remote; it had ceased to operate as an active, efficient and prevailing cause as soon as the wool had been carried on beyond Syracuse, and could not, therefore, subject them to responsibility for an injury to the plaintiff's property resulting from a subsequent inevitable accident which was the proximate cause by which it was produced.

In the case at bar, the property was yet in the custody, care and control of the carrier. His duty in relation to it had been only in part performed, and although the injury would not, doubtless, have happened but for the negligence of the defendant, yet it can hardly be said that such negligence was so remote that it did not contribute to the injury. A similar objection was urged in the case of *Davis* v. *Garrett (supra)*, where it was urged that there was no natural or necessary connection between the wrong of the master in taking the barge out of its proper course and the loss itself, for that the same loss might have been occasioned by the very same tempest if the barge had proceeded in her direct course. But the court held the objection untenable, and said the same answer might be attempted to an action against a defendant who had by mistake forwarded a parcel by the wrong conveyance and a loss had thereby ensued, and yet the defendant in that case would undoubtedly be liable. These cases in Pennsylvania and Massachusetts would seem to establish the exemption of the defendant from liability in the present action. If they are to be regarded as holding that doctrine they are certainly in conflict with numerous adjudged cases, and would greatly relax the rules as to the responsibility of common carriers, and in this state, where with one exception, these rules have been rigidly adhered to, they ought not to be followed. When the carrier is entrusted with goods, and they are injured or lost on the transit, the law holds him responsible for the injury. He is only exempted, by showing that the injury was caused by an act of God or of the public enemy. And to avail himself, of such exemption, he must show that he was free from fault at the time. In the language of the superior court, " a common carrier, in order to claim exemption from liability for damage done to goods in his hands in course of transportation, though injured by what is deemed the act of God, must be without fault himself; his act or neglect must not concur and contribute to the injury. If he departs from the line of duty and vio-

lates his contract, and while thus in fault, and in consequence of the fault, the goods are injured, by the act of God, which would not otherwise have caused the injury, he is not protected." For these reasons I am of the opinion, that the judgment of the superior court should be affirmed.

JOHNSON, J., was for reversal. All the other judges being for affirmance, judgment affirmed.