Dunson *v.* The New York Central Railroad Company.

---

EDGAR W. DUNSON and another, Respondents, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Appellants.

(GENERAL TERM, THIRD DEPARTMENT, OCTOBER, 1870.)

The plaintiff shipped goods, by a common carrier, whose route terminated at Albany, addressed to a consignee at New York, " by Union Express from Albany." He discovered after shipment that the express company was wrongly named in the address, and applied to the carrier, who corrected the way bill; the plaintiff's agent then gave an order for the goods, to the proper express company at Albany, and informed the carrier at Albany of the change; the latter promised to see to it, and ship the goods on. The goods were placed by the carrier in a warehouse at Albany, on arrival there, and two days after were damaged there by an unusual and unexpected flood.— *Held,* that the defendant (the carrier) was chargeable with the damage as a common carrier.

*Held,* further, that the defendant could not claim exemption from liability, on the ground that the damage resulted from the act of God.

THIS was an appeal by the defendant from a judgment of the Supreme Court in the fourth district, rendered in favor of the plaintiffs on the report of a referee.

The action was brought to recover damages for injuries to a quantity of buckskin mittens and gloves, delivered by the plaintiffs to the defendant's agent at Fonda, for transportation to Albany (a distance of forty-four miles), and there to be delivered to an express company, for transportation to New York.

Eight boxes of the mittens and gloves were delivered at the defendant's depot at Fonda on the 29th of January, 1857. They were marked to the plaintiffs, No. 27 Courtland street, N. Y., by Union Express from Albany. The goods were put on the defendant's freight car No. 1272, then standing at Fonda, for the reception of eastern freight, and when loaded, in accordance with the usual custom, were to be taken to Albany, by some freight train coming from the west. The car left Fonda on the 2d, and reached Albany on the night of the 5th of February. From the time of the receipt of the goods at Fonda, until their arrival at Albany, a furious snow storm was raging, which impeded the passage of trains, and for this reason the goods of the plaintiffs were delayed, but by no fault or negligence on the part of the defendants.

After the goods had been loaded in the car, the agent of the plaintiff called to get them back and send them by express, as he was fearful they would not get through to Albany, in time, on account of the storm.

He also stated that the goods were wrongly marked to the Union Express Company, and that no such company existed, and he wanted them to go by the American Express Company or the Hudson River railroad; but as the car could not conveniently be unloaded, the way bill was altered to read, American Express Company, and the plaintiff's agent, proceeded to Albany, and gave the American Express Company an order for the goods on their arrival, and called on the defendant's freight agent at the freight office, and informed him of the matter, and that he wanted the goods sent by the American

Express from Albany. The agent of defendants said he would see to it and ship the goods on. The agent of the American Express Company on this order also called three times at the defendant's depot before they arrived.

On their arrival the goods of the plaintiffs were unloaded from the cars, and placed in the warehouse of the defendant, until February 8th, without delivery to the Express Company or notice of their arrival at the Albany depot.

Between the 5th and 8th of February, there was an unusual and unexpected flood in the Hudson river, caused by the breaking up of the ice in the Mohawk river, by reason whereof the freight-house of the defendant was flooded, and the plaintiff's goods damaged without any want of care on the part of the defendants.

The referee held, that the defendant was liable as a common carrier, and gave judgment in favor of the plaintiffs.

Exceptions were duly taken to the referee's report, and a judgment entered in favor of the plaintiffs, from which the defendant appealed to the General Term.

*J. H. Reynolds*, for the appellants.

*Wells & Dudley*, for the respondents.

Present—MILLER, P. J., POTTER and PARKER, JJ.

MILLER, P. J. The goods in question were delivered at the defendant's depot, in Fonda, on the 29th of January, 1857; left there, in the defendant's car, on the 2d day of February, and arrived in Albany on the night of the 5th, where they were transferred to the defendant's freight platform, and remained until the night of the 8th and the morning of the 9th of February, when the flood overwhelmed the freight-house and caused the damages, to recover which this action is brought.

The defendant, in undertaking to transport the goods, assumed the duty and obligation of a common carrier, and as

such, is liable for the injury incurred, unless such liability is discharged by some act or occurrence which transpired prior to the time when the damages accrued. There is no doubt that such liability continued and remained in force until the goods were received at the defendant's depot in Albany, and the question to be determined is, whether it was afterward discharged. The rule is well settled, that where goods are shipped to be forwarded on beyond the route of the common carrier, by another carrier, that the duty of the first carrier is to transport the goods safely to the end of his route, and deliver them safely to the next carrier on the route beyond. Storing in a warehouse is not enough; and until they are delivered, or an attempt made to deliver them, or at least notice given of their arrival, the first carrier is not relieved from liability. (*McDonald* v. *The W. R. R. Co.*, 34 N. Y., 497.) The rule laid down was not complied with in the case at bar, and unless the plaintiffs are in fault, I think that the failure to conform to it, is not excused. It is alleged, that the goods were wrongly directed, and if the plaintiffs had not changed the directions the goods would have reached New York, their final place of destination, in safety. The goods were originally wrongly marked to the Union Express Company; and no such company existing, the way-bill was altered to the American Express Company, and the agent of the plaintiffs proceeded to Albany, and gave the American Express Company an order for the goods upon their arrival, and notified the defendant. The agent of the Express Company called three times at the defendant's depot before the goods arrived, and no notice was given to him afterward of their arrival. I am unable to discover how this change in the direction, as to the transportation of the goods, can in any way affect the liability of the defendant, or relieve him from his contract as a common carrier. The duty of the defendant was the same whether the goods were forwarded as originally marked or the direction was changed. It was enough that notice was given of the change proposed, and that the defendant had knowledge of it. It is difficult to see how it can fairly be

Dunson *v*. The New York Central Railroad Company.

claimed that if this change had not been made the goods would have reached New York in safety. What difference could there be in reaching their place of destination, whether the goods were forwarded by one express company or another? A delivery by the defendant, or even a notice to the company last designated, would, I think, have been sufficient to have exonerated the defendant from liability, and the alteration made could not in any way affect the safety or expedition of their transportation if the directions given had been followed. The change made created no new contract; imposed no additional obligation, and followed up as it was by prompt notice to the defendant; by efforts to obtain the goods, and a promise of the freight agent to notify the express company designated, when the goods did arrive, I think that the liability of the defendant was not changed from that of a common carrier to a mere warehouseman.

It is insisted that even if the defendant was liable as a common carrier after the goods were deposited in the warehouse, that the damage which ensued was the result of an act of God, and that the defendant is therefore excused. When a common carrier is intrusted with goods for transportation he is exempted from liability by showing that the injury was caused by an act of God or the public enemy. But in order to avail himself of such exemption he must show that he was himself free from fault at the time. This act or neglect must not contribute or concur to produce the injury, and if he departs from the line of his duty and violates his contract, and while thus in fault the goods are injured by the act of God, he is not protected. (*Read* v. *Spaulding*, 30 N.Y., 630.) In the case last cited the authorities are fully reviewed and the doctrine is laid down that where there is an unreasonable delay on the part of the carrier in forwarding the goods, and they are injured by a flood while in the railroad depot, having been exposed to the peril by the fault and neglect of the carrier, he is not excused. It is apparent that the delay of the defendant in detaining them after their arrival, without delivery or notice that they had arrived to the American

The Mayor *v.* The Troy & Lansingburgh Railroad Company.

Express Company, occasioned the loss complained of. Had they been delivered, or notice given of their receipt soon afterwards, the defendant would have been entirely relieved from responsibility; but within the principle laid down in *Read* v. *Spaulding*, the defendant was in fault, and therefore liable to the damages which accrued.

The evidence rejected upon the trial before the referee was not material to the issue on trial, and there was no error in this respect. The judgment entered upon the referee's report must be affirmed with costs.

PARKER, J., concurred.

POTTER, J. There is but one point in this case. The new contract between the parties on account of the plaintiff's mistake in the direction, made the defendants warehousemen, and as such, they would not have been liable had they immediately given notice to the new consignee of the arrival of the goods. The omission to give this notice is the ground of liability. I concur in the result.

Judgment affirmed.