Deaderick, J„
delivered the opinion of the Court.
These six causes were begun by consignors of freight, in the Circuit Court of Dávidson county, against the Nashville & Chattanooga Railroad Company, on different bills of lading, whereby the company undertook to transport certain freight to different points soutli of Chattanooga.
They were by consent consolidated and tried together at May Term, 1869, and verdicts were rendered in each of said causes, separately, in favor of the *60 Railroad Company, except in the case of Ewing & Rector, in which a verdict was rendered in favor of the plaintiffs. All the parties against whom judgments were rendered have appealed in error to this Court.
The declaration in each case alleges that the said Railroad Company was a common carrier of goods and chattels, for hire, and that plaintiff delivered to it at Nashville certain goods, (specifying them,) to be safely conveyed, etc. Yet the said defendant did not take care of said goods, nor safely deliver them, etc., but through defendant’s negligence as such carrier, the goods were wholly lost to plaintiff, to his damage, etc.
The defense relied upon is that the goods were lost by the “Act of God” without any fault or negligence on the part of the defendant.
The goods were received at Nashville, at different dates, in February and March, 1867, and were, within a period of from two to ten days, shipped for their several destinations, and arrived in Chattanooga from the 4th to 6th March, at which place they were submerged on or about the 8th March, by an unprecedented rise in the Tennessee’ river, and were thus lost or .destroyed.
The plaintiffs insisted that the delay in forwarding the goods or part of them, was unreasonable, and amounted to negligence, as it was the incipient' cause of the loss, and requested the Judge to charge the jury: “That if the defendant was guilty of any negligence prior to the flood, which in any way contributed to the loss, or mingled with the cause of it, that they would be liable for the value of the goods.” And *61 further, “If, by the delay of defendant the freight was brought under the operation of the flood and lost, the defendant is ’liable.” The Circuit Judge refused to charge as requested, and charged the jury, “that they- need not inquire whether the goods had been improperly retained at Nashville before shipment, or whether they had been transported with proper dispatch to Chattanooga, and that they should consider only such wrong as the company (the defendant) was in, in relation to the property, at the time of the loss.”
The charge of the Circuit Judge is sustained by the opinion of the Supreme Court of the United States in the case of the Memphis & Charleston Railroad Co. v. Reeves, 10 Wallace, 176.
In that opinion the oases of Morrison v. Davis & Co., 20 Penn., 171, and Denny v. New York Central Railroad Co., 13 Gray, 481, are referred to and approved.
In the first named case, a canal boat was delayed by the use of a lame horse, which would otherwise have passed the place where the injury occurred by an extraordinary flood, in time to have avoided the injury. “The Court held that the proximate cause of the disaster was the flood, and the delay caused by the lame horse was the remote cause, and that the maxim- ccrnsa próxima, non remota speetativr, applies as well to contracts of common carriers as to others.”
In the case cited, in 13 Gray, “ the defendants were guilty of a negligent delay of six days in transporting wool from the Suspension Bridge to Albany. A few days after it was received at Albany, it was *62 submerged by a sudden flood in the Hudson river. It was held that the flood was the proximate cause of the injury, and the delay in the transportation the remote one,” and that the carrier was not liable because of delay merely, in such a case, for the loss.
There was no immediate, impending danger, to the goods at the time of their arrival at Chattanooga; nothing apparent to warn the carrier that he was taking the goods to a place which imperiled 'them, and the act of transportation to Chattanooga was not an act of negligence, but was an act done in the course of the performance of the contract of the carrier.
The goods, therefore, could not be said to have jjbeen brought under the operation of the cause of their ¡ destruction by the negligence of the carrier, at the | time of their arrival at Chattanooga.
The cases of Michaels v. N. Y. Central Railroad Co., 30 N. Y. Rep., 564, and Read v. Spalding, Ib., 630, are cited as holding a different doctrine from that held in 10 Wal., 20 Penn., and 13 Gray.
In the first named case the goods were in course of transportation from New York to Rochester, and were delivered by the Hudson River Railroad Company to the New York Central Railroad Co., Feb. 5, 1856, at Albany, and were deposited by them in their freight house, where, by an extraordinary rise in the Hudson river, they were submerged and damaged, on the 8 th February.
The ground of defense was that the injury resulted from the “ act of God,” and not from any negligence on the part of the defendants
*63 The goods injured were contained in one of three boxes, which came at the same time, to the hands of defendants. Two of the boxes were promptly forwarded to their destination, and the other was detained by the negligence of defendants and sustained the damage while in their warehouse.
The defendants were adjudged liable, having improperly and negligently detained the goods, and not having used proper diligence in securing and protecting them against injury from the flood while in their possession.
The defendants in this case attempt to justify their detention of the injured goods upon the ground that it was their custom not to forward goods, received from a connecting road, until they received a bill of back charges, which had not accompanied the goods detained.
This was held no excuse for detaining goods in transitu, and upon the grounds that the goods were improperly detained, while in course of transportation, and because of want of proper diligence and care in protecting and securing them from damage by the flood, the defendants were properly held liable.
In the other case, the “Spalding Express Freight Line,” on the 27th January, 1857, received at New York eighty-four cases of goods, to be transported to Louisville, Ky. All the goods arrived at Louisville safely and within reasonable time, except five cases which reached Albany, one hundred and sixty miles from New York, on the 7th February, and were damaged, by an unusual rise in the Hudson river, while *64 in the warehouse of the New York Central Railroad, on the 8th and 9th February.
Davis, J., delivering the opinion of the Court, said; “ If these goods had been forwarded from New York to Albany with reasonable diligence, and the injury had happened to them, as it did, by an “ act of God,” then the defendant would have been excused and exempted from liability for the damages to the goods so entrusted to them.” Not forwarding the goods from New York, when they were first received for transportation, within a reasonable time, was held to be such negligence or fault, at the time of the damage, as not to excuse the carrier, although the proximate cause of the injury was the “act of God,” and this was so held upon the ground that such negligence contributed to the injury.
None of the cases cited in support of this conclusion, go to the extent of holding, that, the delay to ship or start goods to their destination, within a reasonable time after left for transportation, will amount to such neglect, as of itself to make the carrier liable for the loss occasioned proximately by the “act of God.” On the contrary, all the cases cited are cases in which the assumed negligence, or want of due diligence and care, occurred at the time of the loss, and while the goods were in transitu.
The first case referred to, is one in which the master of a vessel laden with lime, deviated, unnecessarily, from the usual course, and during the deviation was overtaken by a tempest which wetted the lime, and the vessel taking fire, all was lost.
*65 The Court held the carrier liable, because the loss had actually happened while his wrongful “act/’ (the deviation in the course of the voyage,) was in operation and force, and the loss was attributed to the wrongful act.
The next case cited is one in which a steamboat was grounded, and a box of books injured; the defendants were held guilty of negligence, because in not selecting a proper place for the grounding, and in not removing__the box^of books — when - the water came into the cabin, and said that the injury was not an unavoidable consequence of grounding, but the consequence of negligence in grounding.
In a third case cited, the carrier was held liable-for loss of goods caused by the “ act of God,” on the-ground that he had deviated from the direct and usual route, and was therefore in fault at the time the injury happened: 30 N. Y. Rep., 640 et seq.
Angelí on Carriers, § 12, in distinguishing between, negligence and misfeasance, defines negligence as taking-place in the course of the performance of the contract, and misfeasance to be an act done in contravention of it.
We are, therefore, of opinion that the mere failure of the defendants to forward the goods promptly from their depot at Nashville, where they were received by the consignors for transportation, will not render them liable for the loss occasioned by .the “act of God,” if they were guilty of no wrongful detention of them; or if no negligence or want of care and diligence to protect and secure them against loss or damage, after their arrival at Chattanooga.
*66 After the goods arrived at Chattanooga, the defendants were bound to send them forward without unnecessary delay, and as speedily as practicable, and if they were unnecessarily and negligently detained there by them, they would be liable for their loss.
If they were unable to send them forward before the high waters had stopped the running of the trains, they were bound to use due dilgence and care to preserve and save from injury the goods entrusted to their care.
The degree of diligence required, was stated in the opinion of Judge Freeman, delivered at Knoxville at the September Term, 1871, of this Court, in the case of the N. & C. Railroad v. L. David, growing out of • the flood at Chattanooga, as follows: “ In the case of accident or emergency such as is presented in this case, the Railroad Company is bound to use such means as would suggest themselves to, and be within the knowledge and capacity of well-informed and competent business men in such positions, and such diligence as prudent, skillful men, engaged in that kind of business, might fairly be expected to use under like circumstances, and that this diligence and those means should be actively used to protect and secure the property confided to their care. That they should use actively and energetically all the known means which may fairly be expected to be found within the knowledge of men of average qualifications engaged in business of this kind.”
If the defendants ‘‘ had any reason in the situation they occupied to anticipate that such a flood was about *67 to occur, tben it was the duty of the company to use actively and energetically, all the means at its command, or that it might reasonably be expected of a company engaged in their business to possess, to meet the emergency and save the property confided to their care from injury.”
The charge of the Court is in the main correct, but there is one pai’t of it which we think was erroneous, and calculated to mislead the jury. The Court told the jury, “That in calculating as to the extent and effect of the flood, and the means necessary to ;save the property, it was sufficient prudence for the agents of the company at Chattanooga to regard- the teachings of experience, history and tradition regarding previous floods at that place, and to act upon the same.”
There was no experience, history or tradition of any previous flood which came within several feet of the level of the railroad track at or near Chattanooga. Consequently, under the charge of the Court, the jury might well have concluded that all the means necessary for the company to employ to save the property, or to save themselves from liability, was to keep the goods in the cars upon the track, above any previously known high water mark.
As we understand this part of the charge, it is in substance, that in judging of the probable extent and effect of the flood, the company might safely rely upon the experience and history and tradition of the past, and no matter what the warnings of the present might be, they might safely act upon the experience of the *68 past, and close their eyes to the approaching danger^» after the waters had risen above the highest watdPi previously known.
The company were bound to take notice of the-signs of approaching danger, and if of such a character as reasonably to awaken . apprehension, at a time when the facilities and means of escape from the danger were within their control, they were bound' to use such means for the safety of the property entrusted to their care.
It is a question for the jury to determine, whether-the defendants had such premonitions, of approaching danger, as to awaken the apprehension of men of prudence, and whether in view of the means of escape,, ‘‘they used all such means actively and energetically, as prudent and skillful men in their business might ordinarily be expected to use in such an emergency.”
If they did, and failed to save the property, they would not be liable; otherwise, they would be liable.
The result is, that the .judgment of the Court below in each of the cases, except the case of Rector & Ewing v. Railroad Company, will be reversed, and the judgment in the Rector & Ewing case is affirmed.